GENERAL AMERICAN TANK CAR CORPORATION *v.*
MELVILLE.

[No. 24,109.   Filed January 6, 1925.   Rehearing denied December 10, 1926.]

1. NEGLIGENCE.—*Question of contributory negligence was for the jury.*—What prudence and the exercise of due care would require a person to do in an interval of a few seconds to guard against injury by the negligent acts of another would be peculiarly a question for the jury.   p. 536.

2. TRIAL.—Conflicting answers to interrogatories destroy one another and, therefore, cannot control the general verdict. p. 536.

3. APPEAL.—*Where the facts showed defendant's negligence and plaintiff's freedom therefrom, verdict for plaintiff will not be disturbed.*—Where the facts were such that reasonable men might conclude that negligence of the defendant caused the injury sued for and that no negligence of the plaintiff contributed thereto, a decision of the jury and the trial court that the defendant was liable for damages therefor will not be disturbed on appeal.   p. 537.

4. TRIAL.—*Defendant not harmed by refusal to give further instructions as to contributory negligence.*—Where the court correctly instructed the jury that if any negligent acts of plaintiff contributed to or helped to bring about his injury, he could not recover, the defendant was not harmed by the court's refusal to give further instructions on that subject.   p. 537.

5. TRIAL.—*Trial court not bound to give requested instructions to same effect as ones given although in different language.*— Where the court instructed the jury that the gist of plaintiff's cause of action was negligence of the defendant and that plaintiff must establish defendant's negligence by a preponderance of the evidence it was not bound to give requested instructions to the same effect but in different language.   p. 537.

6. TRIAL.—*Refusal of inaccurate instruction proper.*—In an action for personal injuries because of defendant's negligence, where the negligence charged was the manner and speed of operating defendant's train and failure to guard against accidents by warning persons approaching defendant's railroad tracks, a requested instruction stating that there was "but one charge of negligence" was properly refused, as it was inaccurate.   p. 537.

7. APPEAL.—A judgment will not be reversed for giving an inaccurate instruction where it clearly appears that it did not affect the result.   p. 537.

8. APPEAL.—*Mere assertion that requested instructions correctly stated the law and should have been given presents no question.*—The mere assertion in appellant's brief that each one of fifteen instructions correctly stated the law on some specific issue involved in the case, and therefore should have been given, without attempting to show how any particular instruction applied to any specific issue, presents no question for review. p. 539.

9. NEGLIGENCE.—*Burden of proving contributory negligence on defendant in personal injury cases.*—Under the provisions of §380 Burns 1926, the burden of proving contributory negligence in an action for personal injuries is on the defendant. p. 539.

10. TRIAL.—*Instruction held not to disparage testimony of defendant's employees.*—An instruction that in weighing the testimony of the witnesses, the jury could take into consideration that the plaintiff was an interested party in the suit and that it could also take into consideration that some of defendant's witnesses were employees thereof, but not to disregard their testimony because they were in the defendant's employ, did not disparage such testimony or prejudice the defendant.   p. 539.

11. DAMAGES.—*Evidence justified an instruction that jury could consider both physical and mental pain that plaintiff had suffered.*—In an action for personal injuries, evidence that plaintiff's left leg was crushed off and left lying in the street, that he was otherwise severely injured and was in the hospital four weeks, that he suffered pain in his head and legs, that his right ankle had become crooked and was still swollen at the time of the trial, that he had not worked any since the injury, and evidence of other similar facts, justified an instruction that the jury might consider both the physical and mental pain and suffering that he had endured and would endure.   p. 540.

12. DAMAGES.—*Thirty-five thousand dollars damages for leg crushed off and other severe injuries held not excessive.*—On appeal, in the absence of a showing that the jury was influenced by prejudice, partiality or corruption in fixing the amount of damages awarded to a plaintiff, the court will not set aside the verdict because of excessive damages.   p. 540.

From LaPorte Superior Court; *Harry L. Crumpacker,* Judge.

Action by Herbert Melville against the General American Tank Car Corporation. From a judgment for plaintiff the defendant appeals. *Affirmed.*

*William J. Whinery, Stein, Mayer & David, Gavit, Hall, Smith & Gavit* and *Darrow, Rowley & Shields,* for appellant.

*William J. McAleer, Francis J. Dorsey, Gerald A. Gillett* and *Perry A. Chapin,* for appellee.

EWBANK, J.—Plaintiff (appellee) recovered a judgment against defendant (appellant) for $35,000 damages on account of personal injuries caused by a collision between a street car on which plaintiff was riding as conductor and a train of railroad cars pushed by a locomotive engine that defendant was propelling along a switch track across a public street in the city of East Chicago in which the street railroad was operated, while moving the cars from one part of its factory yards to another part. Overruling defendant's motion for judgment on the answers to interrogatories, but rendering judgment against it on the general verdict, and overruling defendant's motion for a new trial are assigned as errors.

The issues were formed by an answer of general denial to a complaint in one paragraph. The complaint alleged, in substance, that defendant was a corporation; that it owned and operated a large manufacturing plant within the city of East Chicago; that certain railroad corporations, as to whom the action was dismissed before verdict, owned and maintained railroad tracks through defendant's said plant; that defendant and said railroad corporations jointly owned, managed and controlled locomotive engines that were operated over said tracks; that defendant, on October 6, 1920, was engaged in the manufacture of railroad tank cars, and used said locomotive engines to haul, move and set them in and

about its said plant, which extended along each side of
Parish avenue, a public street that crossed it, running
north and south; that for 500 feet along each side of
Parish avenue, defendant maintained buildings extend-
ing out to the street line; that, between said buildings,
defendant had two sets of railroad tracks, forty-three
feet apart, that ran east and west across Parish avenue
and connected the parts of defendant's factory plant on
either side of the avenue; that plaintiff was employed
as conductor on a street car which his employer operated
in and along Parish avenue on a single track laid there-
in; that, as such conductor, it was his duty to run ahead
of the street car when it came north along Parish ave-
nue and reached the south railroad tracks, and to
ascertain whether any locomotives or cars were ap-
proaching thereon, and if there were none, to go to the
north tracks and learn if any were approaching on those
tracks, and if both sets of tracks were seen to be safe
for the passage of the street car over the crossing, to
signal the motorman to bring it forward across said
tracks; that all this had to be done while the street car
stood south of the southernmost set of railroad tracks
because the street car was longer than the distance
(alleged to be forty-three feet) from one set of tracks
to the other; that on said day, when his car was stopped
for said purpose, plaintiff alighted and went ahead to
the south tracks, and then to the north tracks, and
looked both to the east and west but saw no locomotives
or cars approaching on either set of tracks, and did not
hear any signal or warning given by anyone of the ap-
proach of any such locomotives or cars, and that none
were then approaching within the distance he could see
along said railroad tracks; that he thereupon looked
south and signaled the motorman to come ahead with
the street car, in compliance with which signal, the mo-
torman proceeded to run it forward over said crossings;

that as the street car approached the northernmost railroad track, plaintiff climbed upon its rear platform, as it was his duty to do; that "just as the rear platform of said street car had reached the northernmost of said system of tracks, said defendants carelessly and negligently, and without any warning whatsoever, suddenly shunted and caused to be propelled a certain tank car belonging to said defendant along said northernmost tracks from the east to the west over said Parish avenue, whereby the said tank car crashed into and collided with the rear platform of said street car while plaintiff was thereupon"; that defendant's tracks curved sharply immediately inside of its property line, so that the view along them toward the east was obstructed and cut off by buildings and structures of defendant's at not more than sixty-three feet east of the north crossing, and that "to shunt and propel a tank car over said crossing as above alleged without giving any warning whatsoever and with plaintiff's view obstructed as above alleged was careless and negligent on the part of said defendant; * * * that ordinary care (on defendant's part) demanded that someone be stationed at such a point so that he could give warning to plaintiff and to others similarly situated of the approach of said tank cars and locomotive engines; that nevertheless, with the knowledge aforesaid, defendant negligently failed and omitted to give any warning whatsoever of the approach of said tank cars, and negligently failed to take any steps for the purpose of warning plaintiff and others of the approach of said tank cars and of the danger connected with their approach; that said collision between said street car and said tank car crushed the rear platform of the street car," thereby inflicting the injuries complained of.

With a general verdict in favor of plaintiff, the jury returned answers to interrogatories ˙finding specially

that each of the formal allegations of this complaint was true, and also finding (among others) the following facts: That Parish avenue was fifty feet wide, and that it was eighteen feet from the east rail of the track on which the street car was running to defendant's fence on the east side of said avenue; that defendant's north track on which its cars and locomotive were run that injured plaintiff passed from defendant's premises out upon Parish avenue through a gateway sixteen feet wide; that after the street car had stopped at the south crossing, plaintiff went forward to the north track; that from there he could see eighty to 100 feet east along defendant's track; that he looked to the east; that the car which injured him came from the east; that he did not see defendant's train of cars approaching at any time before the accident; that boxes, buildings and a curve in the track prevented; that he could not have seen the train of cars approaching 200 feet away because the view was obstructed; that defendant's train was in plain view of plaintiff, if he had looked toward the east, for eighteen feet before it struck the street car; that the train consisted of six cars and an engine, coupled together, and was running "at the rate of about five miles per hour as said train approached Parish avenue"; that if plaintiff had given his attention to looking for the approach of cars on defendant's tracks, he could not have seen the approach of these cars in time to have prevented his injuries, because of "obstructions, of buildings and fence"; that one of defendant's switchmen was riding on the car which struck plaintiff, as it approached the crossing, and as soon as he saw the street car attempting to cross, he gave the "dead stop signal," and as soon as defendant's switchman, conductor, engineer and employees discovered plaintiff and the street car at the crossing, they did all in their power to stop the train, but it was not stopped within twenty-

five feet after defendant's servants first discovered
plaintiff and the street car there; that neither by look-
ing nor listening, in the exercise of reasonable care,
could plaintiff have seen or heard the train in time
to have prevented his injuries because of lack of time,
surrounding conditions and obstructions; that if he had
looked after giving the motorman a signal to come
ahead, he could not have seen the train because of the
fence and building and boxes, and that there was some-
thing to prevent him from looking east along the track;
that he did not look east more than once along that
track, when he looked at the south rail of the north
track; that defendant's engineer sounded the whistle
four times in running one-half mile as the train ap-
proached Parish avenue, but the train was not at least
200 feet from the avenue when he sounded it as a sig-
nal of the approach of the train; that the motorman
operating the street car did not see the train approach-
ing until about to cross the north tracks of defendant's
railroad, and he could not then have stopped the street
car without injury to it from the train; that the motor-
man could not have seen the train in time to avoid the
collision, if he had looked eastward as his car ap-
proached Parish avenue. There were also findings to
the effect that plaintiff had run over the crossing many
times and was familiar with it and with the dangers in-
cident to passing over it, and knew that many trains
were run on defendant's tracks; that after signaling the
conductor to come ahead, plaintiff did not again look
east before getting on the street car, but walked six feet
toward it and faced west to swing on, and that there
was nothing to prevent him from looking east again,
and that it was nine seconds after plaintiff "approached
the crossing" before the accident occurred. Also, that
after the motorman saw defendant's train approaching,
he put on full power and attempted to run the street

car across before the train should reach the crossing, but that he could not have seen defendant's train so as to stop the street car in time to have avoided running it upon the railroad track.

These answers not only do not show defendant to have been free from negligence, but they state facts from which it might be inferred that it pushed 1, 2. a car around a curve, through a narrow gateway, and out across a street in a city on which street cars were operated, with the locomotive 250 feet or more behind, at such a rate of speed that it could not be stopped before crossing the street railroad track after the lookout on the forward end saw that a street car was actually passing over the crossing; and that it did so without providing any means of knowing what was on or approaching the crossing, or of warning persons not to attempt to cross, except stationing a man on the forward end of the car, where he could not see the approaching street car until within less than twenty-five feet from the crossing. And they did not establish, as matter of law, that either the plaintiff or the motorman operating the street car on which he was riding did anything that a reasonably prudent person would not do, or failed to do anything that a reasonably prudent person would do, under the circumstances, and thereby contributed to cause the injury. What prudence and the exercise of care would require persons to do in an interval of a few seconds to guard against injury by the negligent acts of another was peculiarly a question for the jury. And so far as the different answers were in conflict they destroyed each other so that they could not control the general verdict. *Wise* v. *Cleveland, etc., R. Co.* (1915), 183 Ind. 484, 487, 108 N. E. 369; *Cleveland, etc., R. Co.* v. *Wolf, Admr.* (1920), 189 Ind. 585, 593, 128 N. E. 695.

Where the facts are such that reasonable men might

conclude that negligence of the defendant caused the injury and that no negligence of the plaintiff contributed thereto, a decision of the jury and trial court that defendant is liable in damages will not be disturbed on appeal.

There was evidence that fairly tended to prove the facts alleged in the complaint and found by the jury, and no error was committed in overruling the motion for a peremptory instruction in favor of defendant.

The court correctly instructed the jury that if any of the acts of negligence charged against plaintiff, such as failing to look and listen at a proper time and place, contributed to or helped to bring about his injury, he could not recover, and that his desire to get on the street car was no excuse for failure to discharge his duty in that regard. Defendant was not harmed by the refusal to give further instructions on that subject. The court also instructed the jury that the gist or foundation of plaintiff's alleged cause of action was negligence of the defendant, and that plaintiff had the burden of proof to establish such negligence by a preponderance of the evidence, without proof of which, he could not recover. It was not bound also to give requested instructions to the same effect, but in different language.

The negligence charged was that defendant operated a train of cars, pushed by a locomotive from behind, rapidly around a curve, past obstructions to the view, across the street and the car tracks, without sufficient provision for warning the engineer to stop in case the crossing should not be open, or for warning others not to cross after the train came too close to be stopped. It might be correctly stated as pushing the cars over an unguarded crossing too fast for making a quick stop, where the view was obstructed, or as failing to guard the crossing and to give warn-

ing when so running the train. Both the manner and speed of operation and the failure to provide for guarding against accidents were charged as negligence, but if the alleged acts and the alleged omissions concurred to produce the injury, plaintiff would be entitled to recover in case the defendant had been negligent either in what it so did or in what it so omitted to do. Appellant's requested instruction No. 9 stating that "there is but one charge of negligence" was not accurate. Neither was instruction No. 3 which the court gave, to the effect that there were two charges of negligence in the complaint, and that it was not necessary to prove both of them. The trial court seems to have been misled by certain language used in the case of *Pittsburgh, etc., R. Co.* v. *Tatman* (1919), 72 Ind. App. 519, 122 N. E. 357, which has since been disapproved by this court in *Terre Haute, etc., T. Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740, and did not accurately declare the law as to defendant's duty to maintain a watchman or some other means of warning travelers on the street of the approach of its cars or trains to the crossing. But the evidence, even of defendant's own witnesses, and the answers to interrogatories returned by the jury, showed a state of facts from which a jury doubtless would have found that defendant was guilty of negligence in running its train in the manner and under the circumstances proved, over a crossing in a city used by passenger street cars, which was neither watched nor flagged at the time, even though the instructions had been full and accurate; and we cannot reverse the judgment for an error in giving instructions that clearly did not affect the result. And the same may be said of the court's instruction numbered 12.

No question is presented by the mere assertion of counsel, in general terms, that each of fifteen para-

graphs of requested instructions, containing a total of nearly 4,000 words, stated the law correctly on a specific phase or issue involved in the instant case and covered by the evidence, and therefore should have been given, without attempting to show how any particular instruction applied to any specific phase of the issues or evidence.

8.

The burden of proof as to contributory negligence in an action for personal injuries is on the defendant. §380 Burns 1926, Acts 1899 p. 58, §1. And cases decided prior to 1899, when the statute cited took effect, which cases declared the common-law rule that if a person was injured at a railroad crossing, the fault was *prima facie* his own, are no longer authorities on that question.

9.

Some inaccuracies in the instructions relative to the abstract rule of law on the subject of contributory negligence are complained of, but we do not think they could have misled the jury.

Instruction No. 15 given by the court told the jury that they were the exclusive judges of the weight of the evidence and credibility of the witnesses, and that, in determining what weight they would give to the testimony of any witness, they might take into consideration certain enumerated facts, "and such other facts and circumstances disclosed by the evidence as will assist you in arriving at the truth." It then continued as follows: "In weighing the plaintiff's testimony you have a right to take into consideration the fact that he is an interested party in the outcome of this suit, and in weighing the testimony of any employee of the defendant company you have a right to take that fact into consideration, but you have no right to disregard the testimony of the plaintiff for no other reason than because he is the plaintiff, nor have you the right to disregard the testimony of any witness sworn on

10.

behalf of the defendant simply because any such witness was or is in the employ of the defendant company. It is your duty to consider the testimony of such witnesses, and to determine their credibility by the same principles and tests by which you may determine the credibility of any other witness." This instruction did not disparage the evidence of defendant's employees, and we fail to perceive wherein it was prejudicial to defendant.

There was evidence that plaintiff's left leg was crushed off and left lying in the street, that he was otherwise severely injured, that he suffered pain in his head and legs, that his right leg was not so fleshy after as before the accident and his right ankle had become crooked and still pained him at the time of the trial, and was still swollen, that he was in the hospital four weeks, that he had not worked any since the injury, and evidence of other similar facts. This evidence was sufficient to justify an instruction that the jury might consider both the mental and physical pain and suffering, if any, that plaintiff had endured from his injuries or would endure in the future, if any at all, caused by and arising out of his physical injury.

Finally, appellant complains that the damages are excessive. But as there is nothing to indicate that the jury was influenced by prejudice, partiality or corruption in fixing the amount of recovery, and the trial court has approved the verdict by overruling the motion for a new trial, this court will not interfere to set the verdict aside because of excessive damages. *Baldwin Piano Co.* v. *Allen* (1918), 187 Ind. 315, 322, 118 N. E. 305; *Citizens Tel. Co.* v. *Prickett* (1919), 189 Ind. 141, 162, 163, 125 N. E. 193.

The judgment is affirmed.

Myers, J., absent.