DALE *v.* TRENT.

[No. 169A100. Filed March 17, 1970. Rehearing denied April 7, 1970. Transfer denied July 9, 1970.]

*Daniel J. Harrigan* and *Edgar W. Bayliff, Bayliff, Harrigan & Cord,* Kokomo, for appellant.

*Floyd F. Cook, Cook & Cook,* Kokomo, for appellees.

COOPER, J.—This is an appeal from the Howard Superior Court wherein the appellees filed their complaints against the appellant for the alleged personal injuries suffered by the appellee Marie Trent, and the alleged loss of services of the wife of Walter Trent and medical expenses incurred by him, resulting from an alleged automobile collision between the parties.

The cause being at issue on the amended complaints and the defendant's answers thereto, the cause was submitted to a jury for trial. The jury returned a verdict for the plaintiff Marie Trent in the amount of $5,000.00 and for the plaintiff Walter Trent in the amount of $3,000.00, and judgment was entered accordingly.

Thereafter the defendant filed his motion for new trial. The motion for new trial is contained in 53 pages of the transcript, and we shall summarize the points presented rather than set out the motion in its entirety.

The first cause of the motion for new trial is:

A. Error of law occurring at the trial in the following particulars:

1. The court erred in failing to declare a mistrial and in overruling the defendant's motion to withdraw the submission and declare a mistrial during the direct examination of William Stock, after plaintiff offered in evidence the police report of the accident, identified as plaintiffs' Exhibit B. (Followed by the testimony leading up to the offer of the Exhibit, the motion and the Court's rulings.)

2. The court erred in failing to declare a mistrial and in overruling the defendant's motion to withdraw the submission and to declare a mistrial made during the direct examination of Robert D. Kempe, who was called as a witness by the plaintiffs after plaintiffs offered in evidence Plaintiffs' Exhibit L, a purported insured's notice of loss by the third party, Steven Vance. (Followed by the testimony leading up to the offer of said plaintiffs' Exhibit L, a purported insured's notice of loss by the third party Steven Vance, the objection, the motion for mistrial and the court's ruling.)

3. The court erred in overruling the defendant's motion to withdraw the submission and to declare a mistrial made during the cross examination by defendant's counsel of Walter Trent, who was called as a witness by the plaintiffs, which said motion was made following a volunteered statement by said plaintiff, the effect of which was to inform the jury that the defendant had insurance and further that the defendant's insurance company and another insurance company had conspired together to take advantage of the plaintiffs. (Followed by the testimony leading up to the volunteered statement, the objection, the motion for mistrial and the court's ruling.)

4. The court erred in overruling defendant's motion that the jury be instructed to disregard questions and answers elicited by the plaintiffs' counsel during the cross examination of Lulu Henderson, a witness who was called by the defendant, which questions and answers disclosed the probability that the defendant was covered by insurance, in failing to instruct the jury to disregard said questions and

answers, and in overruling the defendant's motion to withdraw the submission and to declare a mistrial. (Followed by the testimony, the motion of the defendant, and the court's ruling.)

Specifications 5, 6, 7, 8 and 9 are waived by the Appellant.

The second cause of the motion for new trial is:

B. Misconduct of the prevailing party is this:

"Plaintiffs and plaintiffs' counsel were guilty of misconduct in each of the following particulars and all of them, to-wit:

"Plaintiffs' counsel in the presence of the jury repeated and throughout the trial disregarded, disobeyed and evaded rulings of the court that certain evidence and exhibits were not admissible into evidence. This misconduct was accomplished by disclosing the nature and contents of evidence and exhibits to the jury, after the Court had refused admission of such evidence and exhibits. Plaintiffs' counsel repeatedly incorporated the inadmissible matters into questions put to witnesses, made comments in the presence of the jury about such matters and made arguments in which he referred to such matters which arguments were ostensibly addressed to the court but which were actually intended for the jury. Plaintiffs' counsel, repeatedly, when a ruling had been made by the Court excluding evidence, continued to ask substantially the same or similar questions until the inadmissible fact was abundantly clear to the jury, even (Tr. p. 229) if not disclosed in the answers of the witnesses. Plaintiffs and plaintiffs' counsel disclosed to the jury that defendant was insured which disclosure was accomplished by repeated references to insurance in connection with defendant, the total effect of which was to make clear the fact that the defendant was insured.

"One of the effects of plaintiffs' circumvention of the rules of evidence and the rulings of the court was to make it difficult, if not impossible, for the jury to sort out what was evidence in the record which they might properly consider in arriving at a verdict and what was not in the record at all but so clearly hinted at as to seem to be a part of the record.

"Another effect, apparently carefully calculated, was to arouse resentment of the jury against defendant by reason

of his counsel being required, not just once, but many times, to oppose its admission into evidence. The likelihood of resentment being aroused was great as to some of the items repeatedly offered, such as the police report, defendant's insurance, and the documents excluded under the hearsay rule, because such evidence, in the eyes of laymen, would seem to be logically relevant evidence. It was prejudicially harmful to the defendant to cast upon him the risk that the jury would accept the court's admonitions, where given, that the law, for good reasons of policy, held that they, the jurors, were not entitled to be told of such evidence and to give consideration to it.

"The cumulative effect of the combination of all the acts of misconduct was one of confusion and prejudice against defendant to such an extent that there was little chance the jury could reach a just verdict.

"Some of the instances in which such acts of misconduct were committed are set out in an affidavit in support of this specification attached hereto, made a part hereof, and marked 'Exhibit D' to this motion for new trial. Other instances in which plaintiffs and plaintiffs' counsel were guilty of misconduct cannot be set out in Exhibit D because of the inability of the court reporter to prepare the entire transcript within the thirty (30) days allowed for the preparation and filing of this Motion for New Trial."

Because of the seriousness of the charges of alleged misconduct directed at Floyd Cook, attorney for the appellees herein, this writer wishes to state at the outset of the discussion of the motion for new trial that the bill of exceptions containing the evidence, in 480 pages, has been read, reflected upon and re-read in arriving at the decision in this case. It is apparent that both the counsel for the appellant and the appellees are able trial lawyers. Each of them zealously pursued his client's cause. In several instances, the record reveals that the zeal of each of them exceeded the ends of obtaining justice for their clients and became tainted with evidences of personal animosity toward each other.

Concerning the facts from which this cause of action arose, it appears from the record that on January 10, 1964, at about 10:35 p.m., the appellee Walter Trent was driving his pick-up

truck west on East Markland Avenue in the city of Kokomo, Indiana, and his wife, the appellee Marie Trent, and their two children were passengers in the truck. At the intersection of Markland Avenue and South Calumet Street, the appellee intended to make a left turn. He pulled into the center of the intersection and was stopped, waiting for oncoming traffic to clear. While he was stopped, his truck was struck from the rear with sufficient force to knock it through the intersection so that the truck ended up on Calumet Street facing south.

The record further reveals that at the time of the collision, the appellant Lowell W. Dale, Jr., was driving the vehicle immediately behind the appellees, and that one Stinton or Steven C. Vance was driving the second vehicle behind the appellees. (In the pleadings he is referred to as Stinton. In the bill of exceptions he is referred to as Steven.) There is a conflict as to whether the Dale vehicle ran into the Trent vehicle and then was struck by the Vance vehicle, or whether the Dale vehicle had stopped behind the Trent vehicle, was then struck by the Vance vehicle and knocked into the Trent vehicle. Mr. Vance testified that he did not know whether Dale's car hit the truck before he hit Dale's car. It appears that Mr. Vance's insurance company did make some settlement with the Trents.

There is a conflict in the evidence about whether immediately after the collision, Lowell Dale said to Walter Trent that he hit the Trents, and whether he stated to the investigating police officers that he had hit the Trent vehicle and that his vehicle was subsequently struck by the Vance vehicle.

The appellee Marie Trent sustained a whip-lash type injury as a result of which she was hospitalized several times, had to be in traction frequently, was required to wear a cast that encased her from the top of her head down to her hips for a period of six weeks, and she finally underwent surgery for a spinal fusion on September 6, 1966. During this period of over two and a half years, she was considerably disabled, and incapable of caring for her home and family.

The first specification of error in the motion for new trial is that the court erred in failing to declare a mistrial and in overruling the defendant's motion to withdraw the submission of the cause during the direct examination of William Stock after the plaintiffs offered in evidence the police report of the accident.

The record reveals that the questions asked of the witness William Stock, preceding the offer of the police report, concerned his identity, occupation, whether he was at the scene of the accident, whether he talked to any of the drivers, the damage he observed, where he went after the accident, whether he had seen the accident report after it was completed and whether the report was filed by him. The report was then offered into evidence. Mr. Bayliff, counsel for the defendant, objected to the exhibit being introduced into evidence, which objection was sustained by the court. Thus the jury never saw the report.

The appellant contends that police reports are never admissible into evidence, and therefore the fact that counsel for the appellees continued to try to have the police report admitted was evidence of his bad faith and misconduct. With this contention we cannot agree. In the case of *Lee* v. *Dickerson* (1962) 133 Ind. App. 542, 550, 183 N. E. 2d 615, this Court stated:

"It has repeatedly been held by the courts (throughout this nation) that statements contained in a report compiled by a police officer *concerning the cause of or responsibility for an injury* to the person or property are properly excluded from evidence on the basis that it constitutes an opinion or conclusion as distinguished from a statement of fact and/or that it represents statements made by someone else which were given to the investigating officer rather than the reporting officer's own personal observations. See cases cited in the annotations following the case of *Derrick* v. *Blazers* (1959), 355 Mich. 176, 93 N. W. 2d 909, reported in 69 ALR 2d 1143; as well as *Franklin* v. *Skelly Oil Co.* (1944), reported in 153 ALR 156; see also, 20 Am. Jur., Evidence § 1027, pp. 866-867. *While the facts set out in*

*such reports are good evidence, the conclusions and opinions stated therein are not . . ."* (our emphasis)

In the later case of *State* v. *St. Anne Brick & Tile Co.* (1968), 142 Ind. App. 338, 234 N. E. 2d 664, after quoting from the case of *Lee* v. *Dickerson,* the Court states:

". . . The jury was permitted to read the police report which contained opinions and conclusions of the officer *as distinguished from statements of fact,* which, in the opinion of this court, constitutes reversible error." (our emphasis)

Thus it is to be seen that the distinguishing factor in the matter of the admissibility of police reports is whether they contain the police officer's *opinion* as to who was at fault or his *opinion* as to the cause of the accident, as opposed to statements of fact. Any facts contained in such a report are admissible. Conclusions and opinions are not admissible because they invade the province of the jury or the court to make its own determinations. Nowhere in the examination of William Stock was he asked his opinion as to the cause of the accident, or his opinion as to who was at fault. Since the trial court ruled the report inadmissible, the jury did not see it and the defendant was not prejudiced by its contents, whatever they might have been.

We do not know for what purpose plaintiffs' counsel sought to have the report entered into evidence. But when it appears that statements of fact, as opposed to conclusions or opinions, are properly admissible, we cannot say that the mere offer of the exhibit, particularly when it is refused, is so prejudicial that a mistrial should be declared when, in fact, it might be competent evidence for some purpose. The control of the conduct of counsel is peculiarly for the trial court. The trial court has wide discretion in determining the propriety of the conduct of counsel, and, as in all matters of discretion of the trial court, this Court will not interfere with the exercise of that discretion in the absence of

a clear showing of the abuse thereof. *Greyhound Lines, Inc.* v. *Loman* (1968), 143 Ind. App. 347, 240 N. E. 2d 560; *Jay* v. *Holman* (1939), 20 N. E. 2d 656, 106 Ind. App. 413; *Coats* v. *Strawmeyer* (1939), 107 Ind. App. 102, 21 N. E. 2d 433; *St. Louis & S.E. Ry. Co.* v. *Myrtle* (1875), 51 Ind. 566; *Spry* v. *Logansport Loan & Trust Co.* (1922), 191 Ind. 522, 133 N. E. 827; *American Carloading Corporation* v. *Voight* (1939), 107 Ind. App. 267, 21 N. E. 2d 453.

The appellant next alleges as error that the court erred in failing to declare a mistrial and overruling the defendant's motion to withdraw the submission and to declare a mistrial made during the direct examination of Robert D. Kempe, who was called as a witness by the plaintiffs after plaintiffs offered in evidence plaintiffs' Exhibit L, a purported insured's notice of loss by the third party, Steven Vance.

The record reveals that upon direct examination of Mr. Kempe, the witness was identified as a claims representative of the American States Insurance Company, which company insured Lois Vance, Steven Vance's mother. He testified he had received the notice of accident, inspected the vehicles, and that he had the original report. Up to this time, the defendant did not object. The witness was then asked, "How does that report read?" The defendant's counsel then asked preliminary questions, ascertained that it was not signed, and that the witness had not prepared it. He then objected on the basis of hearsay and the objection was sustained. The court then advised the document could be offered into evidence, which plaintiffs' counsel did. Defendant's counsel objected to the exhibit on the basis it was hearsay, which objection the Court sustained. Thus, the report did not get into evidence and the jury did not see its contents. Therefore, the appellant was not harmed by the contents of the report, whatever they might have been.

Again, we cannot agree with appellant's argument that the court should have withdrawn the submission of the cause

and declared a mistrial merely because of the offer of the exhibit. What might be inadmissible in one instance and for one purpose, might very well be admissible in another instance and for another purpose as the trial progresses. Moreover, the Court and counsel might legitimately have differing opinions on the admissibility of a given item at a particular point in the trial. If, in fact, the offered exhibit now being considered were admissible for any purpose, then of course the offer of it could not have been misconduct. We, as an appellate tribunal working only from the cold record, cannot try to second guess the trial counsel or the trial court. Thus, we cannot adopt a position which would say that lawyers must make offers of evidence only at their peril. Again, this is a matter for the discretion of the trial court with which we will not interfere in the absence of a showing of an abuse of that discretion. See cases previously cited.

The appellant next contends that the court erred in overruling the defendant's motion to withdraw the submission and to declare a mistrial made during the cross examination by defendant's counsel of Walter Trent, who was called as a witness by the plaintiffs, which said motion was made following a volunteered statement by Walter Trent, the effect of which was to inform the jury the defendant had insurance, and further that the defendant's insurance company and another insurance company had conspired together to take advantage of the plaintiffs.

The record reveals that Walter Trent, age 37, was not an educated person, never having finished the first grade of school. He grew up in Kentucky and lived there until he was twenty years old. He could neither read nor write. He made his living by farming and doing construction work. During his direct examination he was a straightforward witness, though obviously not sophisticated. He was subjected to a caustic cross examination by Mr. Bayliff extending over two days, during the course of which the witness on several occasions

was shown documents and asked to read and identify them when it had been previously established that the witness could neither read nor write. The witness was questioned about the matter of which attorney represented him at various times during the course of this action, and harried with repeated questions about the matter after he had answered several times that he did not know, and the witness was twice subjected to personal sarcasm directed at him by Mr. Bayliff.

Some of the questions by Mr. Bayliff on cross examination and answers by Walter Trent leading up to the incident complained of are as follows:

"Q. And is it not true that of these persons, if there were any, who were taking statements from you, and asked you to go to Rochester or wherever it was you were asked to go, none of these persons were Mr. Dale or anyone representing him, isn't that a fact?

"A. They was the American States Insurance and different ones, yes. I was asked many a times, yes.

"Q. But none of these persons was a representative of this man, were they?

"A. Yes, I think they were. Why would I be going, why would they be after me. Why would they be trying to get all those false statements.

"Q. Are you saying that Mr. Dale tried to get some sort of a false statement from you?

"A. No, I don't think Mr. Dale actually cared what happened.

"Q. Are you saying that anyone representing Mr. Dale ever contacted you except to say that they didn't owe you anything before you employed Mr. Bolinger?

"A. I don't know who they was representing. They wouldn't tell."

(Tr. p. 574)

"Q. Let's get through if we can, Mr. Trent. None of the persons who contacted you at your home at any time was a representative of Mr. Dale, isn't that a fact?

"A. I was contacted at home several different times by several different ones. Just what company they was from, I don't know. I don't know that. I think I've answered that question.

"Q. We can get at it this way and get a firm answer, can we. If any of these persons were representing Mr. Dale, you don't know about it, do you?

"A. No, if they were, no."

(Tr. p. 576)

The cross examination of Walter Trent continued with drawing the witness' attention to certain questions and answers previously given by him in a deposition concerning the sequence in which the vehicles had collided and what the witness allegedly had told a Mr. Martakis, an adjuster for American States Insurance Co. (Vance's insurer) concerning the impact. The questions and answers then continue as follows:

"Q. Did you tell Mr. Martakis that you didn't see either of the cars before the impact?

"A. I saw the Chevrolet before the impact, Sir.

"Q. The question, Sir—

"A. Mr. Martakis, Sir. Let's get that right. But I never told him that.

"Q. Now we're talking, when you say South Bend, you mean when you went up there and was interviewed by the American States Adjuster? At their office?

"A. I didn't know they was American States. I've a feeling that American States was at Rochester at that time. That's when they pulled a switch on me. He was advised, the doctor got a letter to the company to make them put pressure on my wife and he could, and they put the South Bend office on us then.

"Q. That's what American States did to you?

"A. That's what they did to us.

"Q. Now, explain that a little. I didn't really understand what these people did to you, or did to your employer.

"A. No. During the time I was in the hospital, during some time there, they kept pressuring my wife when I wasn't home and Mike Kerns got where he just about lived at my house. Then, it was bothering my wife. And the doctor said well I have some insurance in the company. I hold stock in that company and I'll write to the home office and have them to quit pestering your wife.

"Q. You are still talking about American States?

"A. We are still talking about American States.

"Q. American States represents Vance, there's no doubt about that, is there?

"A. No doubt about that but they did set up the whole thing, didn't they? Didn't they really set up the whole thing? Didn't that other insurance company stay in the dark and let American States set up the whole thing for them? The truth of it is, I believe you know that. Didn't they set up the whole thing? Didn't they really set up the whole thing?"

(Tr. pp. 583 and 584)

After this, the defendant's counsel first asked the Court to admonish the jury to disregard the answer, which the court did, and then he moved that the submission of the cause be withdrawn and that a mistrial be declared.

It can be seen from the portions of the transcript set out above that Mr. Bayliff inquired about "Mr. Dale's representatives" on more than one occasion. Mr. Bayliff was questioning the witness on the subject of insurance representatives with whom he had talked, and what representatives had visited the witness, and what the witness had said to the various representatives, and it therefore appears that Mr. Bayliff, by the questions he asked, opened the door and led the witness to the response that was given. The record further shows that Mr. Bayliff made no attempt to cut off the witness' answer, or to interrupt his answer while the witness was still speaking to ask that it be stricken. It thus appears that Mr. Bayliff may have attempted to invite error, for the purpose of obtaining a mistrial.

A party cannot complain of an error which he has invited. Works' Indiana Practice, Lowes' Revision, Vol. 4, § 70.94, *Appeals,* p. 699, and cases cited. West's Indiana Law Encyclopedia, Vol. 2, *Appeals,* § 495, p. 388, and cases cited. *Silver Fleet Motor Exp.* v. *N.Y.C. R.R.* (1963), 134 Ind. App. 696, 188 N. E. 2d 829; *Motor Express, Inc.* v. *Chase* (1963), 135

Ind. App. 544, 193 N. E. 2d 78; *New York Central Railroad Company* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N. E. 2d 502.

Nonetheless, the trial court gave the relief Mr. Bayliff requested by instructing the jury to disregard the answer. This was the trial judge's prerogative and we cannot, on this record, or as a matter of law, substitute our evaluation of the pertinency, or of the volunteer nature of the answer. Nor can we say that the denial of the motion for mistrial in fact prejudiced the appellant. We are not persuaded by his counsel's rhetoric, in the absence of a clear showing of prejudice by the record, which does not appear in this case.

The appellant's next contention of error is that the court erred in overruling the defendant's motion that the jury be instructed to disregard questions and answers elicited by plaintiffs' counsel during the cross examination of Lulu Henderson, a witness who was called by defendant, which question and answer disclosed the probability that the defendant was covered by insurance, in failing to instruct the jury to disregard said questions and answers, and in overruling the defendant's motion to withdraw the submission and declare a mistrial.

The record reveals that there were several questions to which this objection could be directed. All of these questions now complained of were propounded to the witness without objection by appellant's counsel at the time they were asked and answered. Appellant's counsel neither objected to the questions nor to the answers as the questions were asked and as the answers were given. He did not move to have the several answers stricken from the record and the jury admonished to disregard the answers at the time they were given. It was only after the several questions had been asked and the several answers given that counsel for the appellant finally asked that the jury be admonished to disregard the questions and answers and that the cause be withdrawn and a mistrial declared.

On oral argument in this court, counsel for the appellant conceded that this contention of error had "probably been waived." Indeed it was. A party may not sit by and let prejudicial or improper evidence be admitted without objection and then, when an adverse judgment is rendered against him, complain that he was harmed by the admission of this evidence. *County Dept. of Public Welfare of St. Joseph County* v. *Morningstar* (1958), 128 Ind. App. 688, 151 N. E. 2d 150; *Falvey* v. *Jackson et al.* (1892), 132 Ind. 176, 31 N. E. 531; *The Cleveland, Columbus, Cincinnati and Indianapolis Railway Company* v. *Wynant* (1893), 134 Ind. 681, 694, 34 N. E. 569; *Epperson* v. *State* (1937), 211 Ind. 237, 6 N. E. 2d 538; *Watts* v. *State* (1950), 229 Ind. 80, 112, 95 N. E. 2d 570.

Since the appellant waived this error at the trial court level, there is no question presented to us on appeal.

Appellant next urges as error misconduct of the prevailing party and counsel for the prevailing party. Several of the particular instances complained of in this specification were raised in earlier sections of the motion for new trial and have already been discussed in this opinion. Those remaining are first, that the plaintiffs' counsel disclosed to the jury the nature and contents of evidence and exhibits, after the court had denied admission of such evidence and exhibits, by incorporating the inadmissible matters in questions put to witnesses; and secondly, that the defendant's counsel was required to object so many times that the resentment of the jury was aroused against the defendant, thereby preventing him from having a fair trial.

As heretofore stated, we cannot accept appellant's position which would require lawyers, at their peril, in the trial of a lawsuit to ask only such questions and offer only such exhibits as are agreeable to opposing counsel. We do not know for what purpose Mr. Cook sought to have the police report and the insurance report admitted into evidence. We cannot second-guess the thinking processes of the

lawyers trying the cases or the judges hearing them. The trial court herein refused to admit into evidence the police report and the insurance report complained of. Since the jury never saw the contents of either of these items, it could not possibly have known the nature of such evidence or the contents of such exhibits. Likewise, it could not have known that such evidence or contents were incorporated in the questions put to witnesses. Its verdict, therefore, could not have been based upon the alleged prejudicial conduct of the plaintiffs' counsel. The mere supposition by appellant's counsel that the jury was able to guess what counsel may have known, does not establish the fact, is merely conjectural, and does not constitute a clear showing of prejudicial and reversible error.

We have heretofore stated that the police report may have been admissible, in whole or in part, depending on whether it contained facts, or conclusions, or a mixture of the two. *Lee v. Dickerson, supra.*

Concerning the allegations that plaintiffs' counsel disclosed to the jury that the defendant was insured and the contents of the "proof of loss" filed by Steven Vance, it is to be noted that by reason of two recent decisions, the matter of insurance coverage is no longer the sacred cow it once was. First, in the cross examination of Lulu Henderson, counsel for the appellant did not object at the time Mrs. Henderson was questioned about what she did with the insurance report she prepared. Mr. Bayliff, himself, on direct examination of this witness, introduced this report into evidence. Mr. Cook on cross examination was then entitled to ask the witness how she prepared the report and what she subsequently did with it, as a part of showing what interest, if any, she had in the matter.

In the recent case of *Pickett* v. *Kolb* (1968), 250 Ind. 449, 237 N. E. 2d 105, our Supreme Court stated:

"It has long been the law in all jurisdictions of which we are aware that a witness may properly be cross examined with respect to his interest in the litigation in question. He

may be cross-examined with reference to his motives, his feelings, friendly or unfriendly towards the parties or other witnesses involved, his employment by either of the parties or some third party, and the contractual relationship with reference to his interest in the litigation and any financial considerations that might have influenced him. 30 I.L.E., *Witnesses* § 21."

\* \* \* \* \* \*

"In other words, proof of liability insurance in and of itself is not admissible, but such a principle may not be expanded to the extent that it serves as a means of excluding otherwise competent evidence which is relevant to the issues involved in the trial. We do not think that a trial court may arbitrarily exclude otherwise competent and relevant evidence merely on the ground that it will reveal an insurance carrier is involved.

"In this case, as previously stated, if a party sees fit to present a witness on his behalf, the opposing party has a right to cross-examine that witness with reference to all of his interests in the litigation, including who is compensating him or giving him anything of value which resulted in his being a witness or participating actively in the litigation."

See also the recent case from this Court, *Arthur S. Yates, Jr.* v. *William Grider* (1969), 145 Ind. App. 567, 251 N. E. 2d 846, which quoted extensively from the *Pickett* case.

Concerning the proof of loss claim filed by Steven Vance, as previously stated, the court ruled it was inadmissible because of hearsay and refused to admit it into evidence. Of course it was not admissible to prove the truth of the matters contained therein, but it might have been admissible to show that the statements contained therein were made. A declaration which admits facts unfavorable to and against the interest of the declarant is generally admissible. *Wayne Works* v. *Hicks Body Co.* (1944), 115 Ind. App. 10, 55 N. E. 2d 382; 12 I.L.E., *Evidence,* §§ 111 and 112, p. 543; C.J.S. *Evidence,* § 212.

Therefore, since counsel for the defendant did not object in the one instance, and since the proof of loss claim filed by Steven Vance and the police report might have been admis-

sible for some purposes, we cannot say that Mr. Cook's questions in these areas disclosing the nature and contents of the exhibits constituted such misconduct as to require the withdrawal of the submission and the declaration of a mistrial.

Interestingly enough, we note that Mr. Bayliff himself on several occasions in the course of his examinations of witnesses, referred to the police report and the insurance matters to which he objected so strenuously.

We now consider the second allegation of misconduct namely that the defendant's counsel was required to object so many times that the resentment of the jury was aroused against the defendant, thereby preventing him a fair trial.

As previously stated, the transcript of the evidence is lengthy. There are numerous objections by both parties to multiple items throughout all of the trial. As the trial court observed in one instance, "Frankly, I don't know what embarrassment defendant should have felt in objecting here in view of the many other objections by both sides throughout the trial." We have previously stated that both counsels were able trial lawyers, and each of them exerted himself to make his record and to preserve what he considered to be error. Whether or not to object during the course of a trial is in the sound judgment of the trial lawyer. We know of no authority, nor has counsel presented any authority, that being obliged to make repeated objections, *per se,* constitutes reversible error.

As heretofore stated, the question of whether or not the conduct of counsel was so improper as to prejudice the fair conduct of the trial is within the sound discretion of the trial court. In the case of *Ferrara et ux.* v. *Genduso et al.* (1940), 216 Ind. 346, 348, 24 N. E. 2d 692, 693, our Supreme Court stated:

"The presumption in favor of correct action on the part of the trial court is one of the strongest presumptions applicable to the consideration of a cause on appeal."

See also *Traylor Brothers, Inc.* v. *Alford* (1967), 142 Ind. App. 294, 231 N. E. 2d 284.

In the case of *King* v. *Ransburg* (1942), 111 Ind. App. 523, 532, 39 N. E. 2d 822, 825, this Court stated:

> "It is to be remembered that attorneys are officers of the court wherein they are engaged in representing their clients and their conduct is at all times subject to the supervision of that court. The judge of that court sits in the presence of the happenings there. He observes what occurs and its effect upon the jurors. Courts of review do not have such advantage. Isolated scenes tend to take on an importance entirely out of proportion to their place in the whole drama when first seen by a stranger, recorded in the cold print of the review record away from the warm atmosphere of the trial arena. So we have the sound rule that the decision of the trial court on matters of alleged misconduct of counsel will not be disturbed unless it appears that the trial court has abused its discretion and the complaining party has been harmed thereby. *Meeker, Guardian* v. *Decker* (1938), 104 Ind. App. 594, 10 N. E. (2d) 416; *Richmond Insurance Co.* v. *Boetticher* (1938), 105 Ind. App. 558, 12 N. E. (2d) 1005; *Jay* v. *Holman* (1939), 106 Ind. App. 413, 20 N. E. (2d) 656; *Pennsylvania Ice & Coal Co.* v. *Elischer* (1939), 106 Ind. App. 613, 21 N. E. (2d) 436."

At this point, we wish to commend the trial judge, and note that he was firmly in control of the proceedings at all times. He was quick to reprimand and admonish witnesses and counsel when such was required, and he was thorough in instructing the jury to disregard matters that were improper. In view of all of the trial court's actions in this regard, we cannot say that he abused his discretion in refusing to go further and withdraw submission of the cause from the jury or grant a new trial because of such alleged misconduct. As was stated by our Supreme Court in the case of *Gerking* v. *Johnson* (1942), 220 Ind. 501, at 509, 44 N. E. 2d 90:

> "An appellate court is too far distant from the scene to gauge the effect of pettifogging remarks of trial attorneys and must repose some confidence in the trial judge's determination that what was said outside the record was rendered harmless by his admonition to the jury."

In conclusion, the evidence concerning how the accident occurred, the sequence of the collisions, was conflicting. The jury chose to believe the plaintiffs' statements concerning the collision. In view of the nature and the extent of the injuries suffered by the plaintiff, Marie Trent, we cannot say that the verdict returned in the total amount of $8,000.00 was the product of prejudice, partiality or corruption, and we cannot say that it was excessive; *King* v. *Ransburg, supra; General American, etc., Corp.* v. *Melville* (1926), 198 Ind. 529, 145 N. E. 890; *Chicago, etc., R. Co.* v. *Stierwalt* (1928), 87 Ind. App. 478, 153 N. E. 807; *Citizens Tel. Co.* v. *Prickett* (1920), 189 Ind. 141, 125 N. E. 193; *Standard Oil Co. of Ind.* v. *Thomas* (1938), 105 Ind. App. 610, 13 N. E. 2d 336.

The record shows that this cause was strongly presented and defended, and that some exchanges between the participants were indeed most heated. The record further reveals some personal animosity between counsel which was unfortunate. However, in considering the entire record, we believe the cause was fully and fairly tried, that the verdict was within the bounds of justice, and that the appellant has failed to demonstrate any reversible error. The judgment of the trial court should, therefore, be affirmed.

Judgment affirmed. Costs vs. Appellant.

Lowdermilk, C.J., Carson and Sullivan, JJ., concur.

NOTE.—Reported in 256 N. E. 2d 402.