# CONNER v. THE CITIZENS' STREET RAILROAD COMPANY OF INDIANAPOLIS.

[No. 17,796.    Filed December 17, 1896.]

STREET RAILWAY.—*Negligence of Driver.*—*Willful Injury.*—Evidence that the driver of a street car slowed up the car at the signal of the plaintiff who was on the car with a friend; that the friend safely alighted while the car was in motion; that while plaintiff was on the platform waiting for the car to stop before getting off, the driver struck the mules with a whip, giving the car a sudden jerk, throwing plaintiff off, is not sufficient to support a charge of willful injury in the absence of proof that the driver knew at the time of striking the mules and starting the car that plaintiff had not alighted from the car.    *pp. 432–435.*

SAME.—*Willful Injury of Passenger.*—To entitle one to recover for an injury without showing his own freedom from contributory negligence, the injurious act or omission must have been purposely and intentionally committed, or it must have been committed under such circumstances as that its natural and reasonable consequence would be to produce injury to others, the actor having knowledge of the situation.    *p. 435.*

SAME.—*Instruction to Jury.*—*Accident.*—An instruction to the jury that if plaintiff was injured as alleged and the injury was accidental, defendant would not be liable, is not erroneous where the whole instruction shows that the word "accidental" was used in the popular sense to signify something resulting undesignedly and without the fault of either party.    *p. 437.*

NEGLIGENCE.—*Instruction.*—*Question of Law.*—In an action for personal injuries resulting from alleged negligence of defendant, an instruction that it is for the jury to determine whether the acts of the defendant, if established, "under all the circumstances amounted to negligence," is not objectionable as authorizing the jury to de-

Conner *v.* The Citizens' Street Railroad Company of Indianapolis.

cide a question of law, where the court by other instructions had defined what it takes to constitute negligence.  *p. 438.*

SAME.—*Street Railway.—Passenger.— Contributory Negligence.—Instruction.*—An instruction to the jury that a street car company, as a common carrier, is bound to the highest degree of care for the safety of passengers, and that such company is liable for injury to a passenger caused by the failure to exercise such care, provided such passenger was not guilty of contributory negligence, is not erroneous because it fails to add an unrequested charge that only ordinary care is required of the passenger.  *p. 440.*

INSTRUCTIONS TO JURY.—*When Not Reviewable on Appeal.*—When it is not shown by the record that all the instructions given by the trial court are in the transcript, the refusal of the court to give certain instructions offered is not reviewable on appeal.  *p. 441.*

EVIDENCE.—*Custom May be Shown as a Fact.*—A custom or usage is a fact that may be stated by a witness in the first instance without stating the incidents or instances within his knowledge by which he became possessed of the knowledge of the custom.  *p. 442.*

RAILROAD.—*Duty of Passenger.*—It is the duty of one about to take passage on cars to ascertain for himself whether the rules of the carrier will permit a stop at a particular point where he may desire to get off.  *p. 443.*

HARMLESS ERROR.—*Evidence.*—It is harmless error to reject admissible evidence where it is clear that the admission of the evidence would not have changed the result.  *p. 444.*

SAME.—*Rejected Evidence.* —The rejection of proper evidence is harmless where other questions were afterwards put to the same witness in better form that elicited all the testimony that the rejected question could have elicited.  *p. 444.*

From the Marion Superior Court.  *Affirmed.*

*T. E. Johnson,* for appellant.

*Mason & Latta,* for appellee.

MCCABE, J.—The appellant sued the appellee to recover damages for personal injuries, alleged to have been inflicted on appellant through the negligence of the appellee, as charged in some of the paragraphs of the complaint, and purposely inflicted, as also charged in the third paragraph, claiming $12,000.00 damages. The issues joined were tried by a jury, resulting in a

verdict for the defendant, upon which the court rendered judgment, overruling appellant's motion for a new trial.

The only error assigned calls in question the action of the trial court in overruling appellant's motion for a new trial. The giving and refusing of certain instructions are specified as grounds for the motion for a new trial. The first instruction complained of is No. 1, given by the court on its own motion. It told the jury that: "The complaint in this case is in three paragraphs. The third paragraph, which charges a willful injury, is not supported by the evidence, and you are therefore instructed not to consider the third paragraph of the complaint." It is insisted that this was error, because it is claimed that the evidence was sufficient to warrant the jury in drawing the inference that the appellant's injury was purposely and willfully committed.

The appellant's testimony shows that he was a passenger on appellee's street car, being drawn by mules, and that he had paid his fare and the fare of his friend, Mr. Beck, ten cents; that he signaled the driver, there being no conductor, to stop at a certain point where he and his companion desired to get off; that the car slowed up and he and Mr. Beck started out on the platform to get off, and Mr. Beck stepped off, though the car had not come to a full stop; that before appellant had reached the platform Beck had got off. Appellant testifies that he got ready himself to step off, but the car did not come to a standstill, it kept moving very slow, though he thought every instant it would stop, but instead, the driver struck the mules and surged it forward, and he said, "I lost my balance and fell."

There is no evidence that the driver knew that appellant had not got off, at the time he struck the mules

Conner *v.* The Citizens' Street Railroad Company of Indianapolis.

and started the car faster. It may be justly said that it was the driver's duty to know whether the passenger had got off in safety before starting up the car faster. Indeed, it was his duty to stop the car at the proper place long enough for passengers desiring to do so to alight in safety. Such failures and omissions, however, are nothing more than negligence, unless there was some evidence of knowledge on the part of the driver at the time of striking the mules and starting up the car that appellant had not got off the car.

The rule applicable here was stated by Mitchell, J., speaking for the court in *Gregory, Admr.,* v. *Cleveland, etc., R. R. Co.,* 112 Ind. at page 387, thus: "As a rule of evidence, the presumption that every person intends the natural and probable consequences of his wrongful or unlawful acts applies as well in civil as in criminal cases; hence, the unlawful intent may be shown by direct evidence, or it may be inferred from conduct which shows a reckless disregard of consequences, and a willingness to inflict injury, by purposely and voluntarily doing an act, with knowledge that some one is unconsciously or unavoidably in a situation to be injured thereby. An act which in itself might be lawful becomes unlawful when done in a manner or under circumstances which charge the actor with knowledge that it will result in injury to some one. *Palmer* v. *Chicago, etc., R. R. Co., ante,* 250; *Louisville, etc., R. W. Co.* v. *Ader,* 110 Ind. 376; *Louisville, etc., R. W. Co.* v. *Bryan,* 107 Ind. 51; *Belt R. R. Co.* v. *Mann,* 107 Ind. 89; *Pennsylvania Co.* v. *Smith,* 98 Ind. 42.  *  *  *

"The right of the court to direct a verdict for the defendant, in case the plaintiff's evidence, giving it the most favorable construction it will legitimately bear,

VOL. 146—28

fails to establish any fact which constitutes an essential element in his right of action, is clear. [Citing authority.]

"The rule which governs in such cases is, substantially, that which controls where there is a demurrer to the evidence. If the plaintiff's evidence, with all the legitimate inferences which a jury might reasonably draw from it, is insufficient to sustain a verdict in his favor, so that a verdict for the plaintiff, if one should be returned, would be set aside, the court may properly direct a verdict for the defendant without submitting the evidence to the jury."

That is practically what the instruction in question did. It amounted to directing the jury to find for the defendant as to the third paragraph of the complaint.

*Palmer* v. *Chicago, etc., R. R. Co., supra,* was a case where a deaf person was walking on the railroad track of the appellee, and his father, who saw the passenger train coming behind his son, ran ahead of the train waving his hat at his deaf son and making signals to him to get off the track. But the deaf son's face was not turned and he failed to see his father or the signals or the train running toward him from the rear. The train ran over and killed him. The engineer in charge of the engine testified that he saw both men, but did not see the father making signals to his son and did not know that the son or the foremost man was deaf. This evidence was not contradicted, the father testifying that he did not know whether the engineer saw the signals or not. It is there said, on page 260, that: "The fact that signals indicating peril are given and are seen by the engineer, plainly distinguishes the case from the class of cases represented by the *Terre Haute, etc., R. R. Co.* v. *Graham, supra.* Proceeding in defiance of such signals creates the constructive intention of which our cases

speak, and makes the conduct of the wrongdoer will-ful. Such an act is not simply negligence; it is a wrong implying a willingness to inflict an injury.

"While we agree with appellant's counsel upon the legal proposition as we have stated it, we cannot agree in their inference of fact, for we cannot assent to the conclusion that a jury might have inferred that the engineer saw the signals given by the father of the deceased."

And so here we do not think that the jury could rea-sonably and logically draw the conclusion from the evidence above set forth, that the street-car driver knew, when he started up the car by striking the mules with his whip, that the appellant had not yet got off the car and was in a situation making it dan-gerous to appellant to so start up the car by striking the mules with his whip. To the same effect are *Louis-ville, etc., R. W. Co.* v. *Ader, supra; Louisville, etc., R. W. Co.* v. *Brana, supra; Belt R. R. Co. v. Mann, supra; Pennsylvania Co.* v. *Smith, supra; Citizens' Street R. R. Co.* v. *Willoeby,* 134 Ind. 563; *Belle-fontaine R. W. Co.* v. *Hunter, Admr.,* 33 Ind. 335, 5 Am. Rep. 201.

The substance of the rule as established by the cases to which we have referred is, that to entitle one to recover for an injury without showing his own free-dom from contributory fault, the injurious act or omis-sion must have been purposely and intentionally com-mitted, with a design to produce injury, or it must have been committed under such circumstances as that its natural and reasonable consequence would be to produce injury to others, the actor having knowl-edge of the situation of those others. There must have been an actual or constructive intent to commit the injury. A constructive intent may be established by evidence showing a reckless disregard for the

safety of others, and a willingness to inflict the injury complained of. Such action is willfulness. But willfulness implies knowledge on the part of the actor. *Parker, Admr.,* v. *Pennsylvania Co.,* 134 Ind. 673; *Evans* v. *Pittsburgh, etc., R. W. Co.,* 142 Ind. 264. It is not necessary, however, to show the intention, either actual or constructive, to commit the particular injury which resulted. It is enough to show that some injury to another or others would naturally and probably result from the act complained of. Here the evidence most favorable to appellant shows that he rang the bell signaling the driver to stop the car at a given point. That the driver accordingly slowed up the car until it was going very slow, so that Mr. Beck alighted from the car without any difficulty before the appellant got out onto the platform. There is no evidence that the driver knew that appellant also wished to get off, nor was there any evidence that the driver knew that appellant paid both fares, there being no conductor and the ten cents, the two fares having been put in the box provided for its reception; there was nothing to indicate to the driver that both men wished to get off at the same place. There was no evidence to show that the driver knew that appellant was out on the platform, about to get off, when he struck the mules with his whip and started up the car. As before observed, it was his duty to know it, but his failure to observe the appellant's motions, he being eighty years old, may have been negligence, but did not indicate a willingness to inflict an injury upon the appellant. There could be no willfulness on the part of the driver unless he knew the situation of the appellant when he did the act complained of. Nor could the jury legitimately draw the inference, from the evidence recited, that he did know such fact. Because it was his duty to know the fact, affords no just ground

for the jury to infer that he did know it. Therefore, the trial court did not err in withdrawing the third paragraph from the consideration of the jury.

The next instruction complained of is the fourth, given by the court on its own motion. The instruction is very long, and it is conceded that it states the legal liabilities and rights of the respective parties under the facts detailed in the evidence up to the last or closing sentence, reading as follows: "If the plaintiff was injured, as alleged in his complaint, and the injury was accidental, the defendant would not be liable." We are referred to *Nave* v. *Flack*, 90 Ind. 205, as authority holding such an instruction erroneous. That case involved an instruction refused, touching the question of negligence as applicable to the facts in that case. It was there said: "It is contended that the word 'accident' qualifies the instruction and makes it correctly express the law. We do not think so. A pure accident, where there is an absence of negligence, will not supply a cause of action, but where the accident is attributable to the negligence of the defendant, it is otherwise. Sherman & Redf. Neg., section 5. The poverty of language compels the use of words in different meanings, and this is notably true of the word 'accident.' Strictly speaking, an accident is an occurrence to which human fault does not contribute; but this is a restricted meaning, for accidents are recognized as occurrences arising from the carelessness of men. Browne Jud. Interp. 4. The use of the word 'accident' does not save the instruction before us."

There was enough in the instruction in the case now before us, preceding the part we have quoted, to require the jury to find for the plaintiff, if the accident was caused by the defendant's negligence.

In its popular sense the term "accident" signifies an

event or occurrence which happens unexpectedly, from the uncontrollable operations of nature exclusively, or an event resulting undesignedly and unexpectedly from human agency alone, or an event resulting from the joint operation of both of the foregoing agencies. 1 Am. and Eng. Ency. of Law (2d ed.), 277.

The whole instruction plainly shows that it was in the latter sense that the word was used in the instruction, and not in the sense that the occurrence may have arisen from the carelessness or negligence of the appellee's driver. There was no error in giving the instruction.

It is next complained that the fifth instruction given by the court is erroneous. The part of it objected to reads as follows: "It is for you to determine from the evidence before you if the act charged against the driver has been established by a preponderance of the testimony, and if you believe that it has been so established, you will then determine if such act, under all the circumstances amounted to negligence."

The objection urged is that the instruction authorized the jury to decide a question of law. The converse almost of the proposition contained in the above instruction was held by this court to have been erroneously given to the jury in *Pennsylvania Co.* v. *Hensil*, 70 Ind. 569, 36 Am. Rep. 188. The instruction there told the jury that: " 'If you find from the evidence that the train that struck the plaintiff, if one did strike her, consisted of two cars and an engine; that the two cars were being backed over the street; that there were no brakes or brakemen on the front car as it passed over the crossing, and no one in advance of the cars; that no bell was rung as the train was backing over the street; that the crossing was in a populous part of the city and much frequented

by people continually passing over it—then you should find the defendant guilty of negligence.'" It is there said of this instruction, at page 575, that: "The facts enumerated in this instruction may or may not have constituted negligence, depending upon other facts which may have had some relation to the alleged injury to the appellee. As an instruction, it confounded that which, under the circumstances, only tended to prove negligence, with negligence itself. It is assumed to make a matter of law out of facts which the jury were entitled to consider in connection with other facts which had been submitted to them.

"The cases in which the question of negligence can be thus withdrawn from the jury are of comparatively rare occurrence. It is only when the circumstances of a case are such that the standard of duty is fixed and certain, or when the measure of duty is defined by law and is the same under all circumstances, or when the negligence is so clearly defined and palpable that no verdict could make it otherwise, that the court is authorized to make the question of negligence one of law and not of fact. Thompson Negligence, 1236; Sherman & Redfield Negligence, sec. 11."

Another instruction very similar to the one above quoted was held to have been erroneously given to the jury in *Pittsburg, etc., R. W. Co.* v. *Wright, Exr.*, 80 Ind. 236, where it was said: "Upon the hypothesis that the evidence showed the facts stated, and no other facts than those stated in the instruction, the case was not such as to enable the court to say, conclusively, as a matter of law, that the plaintiff was entitled to recover. It still remained to be determined by inference from the facts supposed, whether the defendant's servants had been guilty of any negligence or want of care, which caused the injury complained of." To the

same effect are *City of Franklin* v. *Harter*, 127 Ind. 446, and *Evans* v. *Adams Express Co.*, 122 Ind. 362.

In *Hudson* v. *Houser, Admr.*, 123 Ind., at page 320, it is said: "By the sixth instruction the court was requested to charge the jury that if the evidence established a certain state of facts, those facts, standing alone, did not constitute such negligence as to render the appellant liable.

"This instruction was properly refused for two reasons—it ignored the evidence of other facts and was calculated to mislead the jury. * * * * The second reason is that, under the evidence in the case, the question of negligence was a question of fact for the jury. See *City R. W. Co.* v. *Lee*, 50 N. J. L. 435 (7 Am. St. 798, and note); *Pittsburg, etc., R. W. Co.* v. *Wright*, 80 Ind. 231; *Ramsey* v. *Rushville, etc., G. R. Co.*, 81 Ind. 394; *Town of Albion* v. *Hetrick*, 90 Ind. 545; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Chicago, etc., R. R. Co.* v. *Hedges, supra; Woolery* v. *Louisville, etc., R. W. Co.*, 107 Ind. 381; *Evansvilll, etc., R. W. Co.* v. *Harrington*, 82 Ind. 534."

Under the rule established by these cases, it was not error to direct the jury to "determine if such [act of the driver established by the evidence], under all the circumstances, amounted to negligence." That was the exclusive province of the jury which the court had no right to invade. The court had already properly defined what it takes to constitute negligence, we presume, the record not showing the contrary. It was, therefore, the exclusive province of the jury to determine whether, under all the circumstances, the act of the driver amounted to negligence according to the legal definition of negligence given them by the court.

It is also urged that the superior court erred in the fourth instruction, already mentioned, in another particular. In it the jury were told that the street-car

company was a common carrier, and was bound to the use of the highest degree of care for the safety of passengers, from the time they enter the car until they leave it, and that such company was liable for an injury to a passenger caused by a failure to exercise such care, provided that such passenger was not guilty of any fault or negligence on his part which contributed to the injury. The objection to the instruction is, that it did not go further and tell the jury that the care required of the passenger in order to exonerate him from contributory negligence was not of the same high degree required of the carrier, but that the law only required of the passenger ordinary care. The instruction was not erroneous as given, and would not have been erroneous by the addition, the absence of which is complained of. If appellant was fearful that the jury would construe the instruction to mean that the same degree of care was required of the passenger as is required of the carrier, as he now insists they may have done, then he should have asked an instruction removing the possibility of mistake in that respect. This he failed to do. He is, therefore, not in a situation to successfully urge that the court erred because the jury might have made a mistake and misconstrued the instruction.

It is next urged, at great length, that the superior court erred in refusing to give to the jury a series of eight instructions asked by the appellant.

There is nothing in the record to show that the instructions that appear in the transcript as having been given by the court are all the instructions that the court gave to the jury.

For aught that appears the refused instructions may have been refused because the court had already fully instructed the jury upon the points involved in the offered instructions. In that case it would be no

error to refuse them, even though they each stated the law correctly as applicable to the case. We are bound to presume in favor of the ruling of the trial court, if any legal reason may have existed justifying the action of the court, unless that reason is affirmatively shown by the record not to exist. *Ohio, etc., R. W. Co.* v. *Buck*, 130 Ind. 300; *City of New Albany* v. *McCulloch*, 127 Ind. 500; *Lehman* v. *Hawks*, 121 Ind. 541; *Musgrave* v. *State*, 133 Ind. 297; *Stewart* v. *State*, 111 Ind. 554.

The sixth ground of the motion for a new trial is, that the court erred in overruling appellant's objection to a question on cross-examination of appellant's witness, George Abbott, as follows: "I will ask you if there has ever been a time in your knowledge of street railroading when the company had a custom of stopping on curves to let passengers get off or on the cars? Ans. No. sir; we would never stop at curves."

The only one of the objections made to the question at the time, that is now urged in appellant's brief is, that a custom is a conclusion from a group of facts; that the question did not call for a fact, but a conclusion. No authority is cited in support of the proposition that a custom or usage is not a fact, but a conclusion, and we know of none. A custom or usage is a fact that may be stated by a witness in the first instance without stating the incidents or instances within his knowledge by which he became possessed of the knowledge of the custom, the same as he may testify to the general reputation of a witness. 1 Green. Ev. (Redf. Ed.), section 128-129, (2d ed.), sections 148-152.

The next ruling complained of is made the fourth ground in the motion for a new trial, namely, overruling appellant's objection to a question put to him by his counsel, as follows: "Q. On Thursday, before

you got hurt, when you rang the bell, as stated by you, state what the party in charge of the car did in reference to slowing up the car, if anything." On sustaining appellee's objection, appellant's counsel stated that: "We offer to prove in response to the question asked, that the driver in charge of the team and car, as soon as the bell was rung, slowed up and stopped the car for the plaintiff to alight therefrom, at or about the same point where the plaintiff was thrown from the car on Saturday."

This question had reference to the controversy in the case whether, by the rules of the company, cars were allowed to stop at all at the point where appellant attempted to get off, it being maintained by the appellee company that their rules did not permit cars to stop at that point. It is the duty of one about to take passage on cars to learn and ascertain for himself whether the rules of the carrier will permit a stop at a particular point where he may desire to get off. *White* v. *Evansville, etc., R. R. Co.*, 133 Ind., at page 487. And he has no right to rely on the statement of a ticket agent selling him a ticket for passage on such road that the train will stop at a given point, in the absence of any statement by such agent that the rules of the company allowed the train to stop at such point. Therefore, the act of another car driver of appellee stopping a single time at a point not permitted by the rules of the company, was of very little force as against the undisputed evidence that the rules of the company as to such stop were posted up in the car in printed letters large enough to be read by any one across the car, to the effect that that car would stop only at the farther crossing, that being a different place than that where appellant attempted to get off. The only ground on which it is claimed by appellant that the evidence ought to have been admitted is that it would

tend to show that appellee had been in the habit of stopping at that point to let passengers off.

Even if such habit could have any effect in modifying the clearly established rule of the company on that point, we think the proof of a single act of the company can hardly be said to tend to establish such habit. As was said by Justice Field, in *Ins. Co.* v. *Foley*, 105 U. S. 354, "It would be incorrect to say that a man has a habit of anything from a single act." See *Lynch* v. *Bates*, 139 Ind. 206. The word habit is defined to be a fixed or established custom; ordinary course of conduct.

But conceding, without deciding, that the offered evidence was erroneously excluded, yet in view of all the evidence the result must have been the same if it had been admitted. It has often been correctly and justly held by this court that the rejection of admissible evidence which could not have changed the result is a harmless error. *Hanlon* v. *Doherty*, 109 Ind. 37; *Aufdencamp* v. *Smith*, 96 Ind. 328; *Bartlett* v. *Pittsburg, etc., R. W. Co.*, 94 Ind. 281. Hence, the error, if error it was to exclude it, was harmless.

The fifth ground in the motion for a new trial is sustaining an objection to a certain question put to the witness John Simmons. But whether right or wrong, the ruling proved harmless by reason of the fact that other questions were afterward put to the witness in better form that elicited all the testimony that the rejected question could have elicited.

We have gone over all the questions raised and presented by the assignment of errors and appellant's brief, and find no available error. Our labors have been unnecessarily increased by the fact that appellee's brief is missing from the files.

The judgment is affirmed.