CHRYSLER CORPORATION $v$. FREDERICK L. ALUMBAUGH AND
EDWARD E. YORK.

[No. 3-1173A152. Filed March 10, 1976. Rehearing denied June 10, 1976.
Transfer denied September 14, 1976.]

*Joel C. Levy, Steven R. Crist, Tinkham, Beckman, Kelly & Singleton*, of Hammond, for appellant.

*Michael C. Harris, Robert A. Welsh, Harris & Welsh*, of Chesterton, for appellee Alumbaugh. *William S. Spangler, Spangler, Jennings, Spangler & Dougherty*, of Gary, for appellee Edward E. York.

GARRARD, J.—Chrysler appeals from a judgment entered upon a verdict for the plaintiff in a suit for personal injuries arising from an automobile collision.

On February 4, 1969, the plaintiff, Alumbaugh, was travelling west on U.S. Highway 20, a four-lane highway. Alumbaugh was driving in the outside (right) lane, and a vehicle driven by Steven Lesicko was in the inside (left) lane in the process of passing. At this point Edward York, who was operating a new 1969 Dodge pickup truck, approached Alumbaugh from the rear. Since the passing lane was occupied, York applied his brakes to avoid striking Alumbaugh. When he did this, the pickup veered suddenly to the left and struck Lesicko's vehicle. This, in turn, caused Lesicko to strike Alumbaugh's truck. Alumbaugh lost control. His vehicle left the highway and struck a tree, causing the injuries complained of.

Subsequently, Alumbaugh sued York, Lesicko, Chrysler Motors Corporation and Greiger Motors, Inc. Lesicko and Greiger Motors, Inc. were later dismissed as defendants. Shortly before trial, Alumbaugh moved to substitute as a defendant Chrysler Corporation for Chrysler Motors Corporation. This motion was granted.

On appeal Chrysler questions this substitution of defendants. It also urges error in the trial court's application of strict liability, in the failure to grant a mistrial over an insurance disclosure, in the court's treatment of certain requested instructions, and in the admission and exclusion of evidence. We affirm.

## I. Substitution of Parties

Alumbaugh's original complaint, which was filed prior to the inception of our present rules of civil procedure, named Chrysler Motors Corporation as a defendant. Although an amended complaint was filed in 1971, this identification continued. In May 1972, more than two years after the collision, answers to interrogatories filed by Chrysler Motors Corporation denied manufacture of the vehicle and disclosed that the manufacturer was Chrysler Corporation. When Alumbaugh moved to substitute Chrysler Corporation as a party defendant, objection was made that the statute of limitations had expired and the substitution was impermissible.

Admittedly, the court's action in granting the motion is not within the purview of Indiana Rules of Procedure, Trial Rule 25, which provides for substitution of parties in certain situations.

Alumbaugh urges, however, that the substitution was permitted by the provisions of TR. 15(C). The relevant portion of this rule provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original

pleading. *An amendment changing the party* against whom a claim is asserted *relates back if the foregoing provision is satisfied and,* within the period provided by law for commencing the action against him, *the party to be brought in* by amendment

 (1) *has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and*

 (2) *knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him. . . ."* (Emphasis added)

In this case it is apparent that the liability asserted against Chrysler Corporation ". . . arose out of the conduct, transaction or occurrence" set forth in the original and amended complaints.[1] It is equally apparent that Chrysler Corporation knew or should have known that but for a mistake in identity, suit would have been initiated against it. Finally, there was evidence before the court from which it could determine that Chrysler Corporation had notice of the action within the limitation period and that its defense on the merits was not prejudiced. Chrysler does not argue these points. Instead, its position is that TR. 15(C) is limited in application to changing the name of a party against whom a complaint was served.

To date, only two Indiana cases have spoken of the rule.[2] In *Ryser* v. *Gatchel* (1972), 151 Ind. App. 62, 278 N.E.2d 320, a plaintiff had erroneously named a driver's insurance agent, rather than the driver, as the defendant. The error was discovered more than two years after the collision, and the correct defendant was then named. He set up the statute of limitations in a motion for summary judgment. On appeal

---

 1. The claim originally asserted alleged that the defendant was the manufacturer of the vehicle and that liability was claimed because of a defect in manufacture.

 2. For a case construing TR. 15(A) in conjunction with TR. 17(A) regarding the failure to have joined the real party in interest, see *Brendanwood Neigh. Ass'n., Inc.* v. *Common Council* (1975), 167 Ind. App. 253, 338 N.E.2d 695.

the plaintiff urged that TR. 15(C) permitted the substitution, but this court refused to consider its application since plaintiff's affidavits, etc. in opposition to the summary judgment failed to set forth facts showing compliance with the conditions prescribed in the rule.

In *Gibson* v. *Miami Valley Milk Producers, Inc.* (1973), 157 Ind. App. 218, 299 N.E.2d 631, the court noted the relevance of federal decisions construing Federal Rules of Civil Procedure 15(c). Following a line of federal cases, the court held that the rule would not permit the *addition* of another party after expiration of the limitation period.

Where, however, the plaintiff seeks to substitute a party as defendant for one whom he erroneously named within the statutory period, the federal decisions have generally held the substitution permissible if the conditions of the rule are met. *Craig* v. *U.S.* (9th Cir. 1969), 413 F.2d 854; *Williams* v. *U.S.* (5th Cir. 1968), 405 F.2d 234; *Travelers Indemnity Co.* v. *U.S.* (10th Cir. 1967), 382 F.2d 103. *See also, Bernstein* v. *Uris Bldg. Corp.* (S.D. N.Y. 1970), 50 F.R.D. 121; *Meredith* v. *United Airlines* (S.D. Cal. 1966), 41 F.R.D. 34; 6 Wright & Miller, *Federal Practice and Procedure* (1971), §§ 1497, 1498.

In *Travelers Indemnity Co.* v. *U.S., supra*, the court noted the underlying philosophy of the federal rules to facilitate decisions on the merits and avoid pleading traps. The court stated:

> "This purpose is not furthered by giving Rule 15 lip service rather than full fealty. Nor is the purpose of the federal rules furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced. The ends of justice are not served when forfeiture of just claims because of technical rules is allowed. Thus the reasons [sic] amendments are to be granted freely as justice requires, and the trial court's decision to allow amendment will not be upset unless a clear abuse of discretion exists." (citations omitted) 382 F.2d 103, 106.

The same philosophy applies in the interpretaton of our rules. TR. 1. That our Civil Code Study Commission had this view in mind in the adoption of TR. 15 (C) may be gathered from the official comment to this section of the rule:

> "If the requirements are met, an amendment changing a party defendant is not a new proceeding which would be subjected to the statute of limitations as of its filing date. This portion of the new rule will alter prior Indiana case law."

Accordingly, we hold the substitution was proper.

## II. Disclosure of Insurance Coverage

The defendant York had employed Packer Laboratories to conduct tests upon the Dodge pickup truck. During the course of pre-trial discovery, Alumbaugh took the deposition of Dr. Packer. In the pre-trial order, all of the parties included Dr. Packer as a potential witness to be used at trial. However, this evidence was not presented during plaintiff's case. When plaintiff rested, Chrysler introduced a portion of the deposition as its first item of evidence. During the reading of the deposition to the jury by Chrysler's attorneys, the following occurred:

"MR. LEVY: Page 85 at the bottom. (Reading.)

Q. 'Involving or regarding the 1969 Dodge and the file you have before you, did you do anything in regards to accident reconstruction as to that vehicle or as to the accident in question?'

MR. CRIST: (Reading.)

A. "Well, I initiated an accident reconstruction program, gathered a limited amount of information, but did not pursue this to the end.'

Q. 'Did you or any member of your staff view the scene of the accident?'

A. 'No, sir, except through photographs.'

MR. LEVY: Page 92. (Reading.)

Q. 'Did you ever have any contact with anyone on behalf of American States Insurance Company?'

A. 'Yes, sir.' "

At this point counsel for York moved to strike the answer and stated:

"All Mr. Levy is trying to do is prejudice this jury. Now, there is no purpose for that, to put that in. We have already indicated to the jury, and Mr. Levy, if you want to know, yes, we represent—we represent American States Insurance Company, and we have got $15,000.00 worth of coverage. You put it before the jury, you have done it intentionally, and you have been trying for three days to get this in. You have invited it."

Chrysler then moved for a mistrial. The court denied the motion, but strongly admonished the jury to disregard the insurance reference.

On appeal, Alumbaugh urges that any error was invited. Chrysler asserts that it was entitled to establish that Packer was employed by York and the amount he was paid. Since the employment was actually secured by York's insurance carrier (American States), Chrysler urges that its reading of the question was proper and the statement made by York's counsel was reversible error.

We initially note that the statement by York's counsel may be viewed in two ways.

> Because the statement was made by counsel, it may be considered a question of misconduct of counsel. *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 115 N.E.2d 134.

However, in order to secure a reversal of the judgment on the ground of misconduct, our cases have established a strict procedure to be followed. Procedurally, the injured party must either (a) interpose a prompt objection and seek an admonishment before requesting a mistrial, or (b) promptly object and move at once for a mistrial stating the reasons why the harm done could not be cured by any other action the court might take. *Lawson, supra. See also, Richmond Gas Corp.* v. *Reeves* (1973), 158 Ind. App. 338, 302 N.E.2d 795.

In addition, appellate review of misconduct of counsel has been said to require an affirmance unless it appears the misconduct was probably the means of securing a wrong verdict.[3] *Indiana Pipe Line Co.* v. *Christensen* (1924), 195 Ind. 106, 143 N.E. 596; *Sheridan* v. *Siuda* (1971), 150 Ind. App. 395, 276 N.E.2d 883.

Here no admonishment was requested nor were any reasons given why only a mistrial could remedy the harm done.

The second view which Chrysler urges upon us focuses upon what was said, i.e., the injection of insurance.

Again our courts, while acknowledging the error in such a disclosure, have generally left it to the discretion of the trial judge, who is most aware of the total context and probable import of the error, to determine whether an admonishment is sufficient corrective action. *Lamb* v. *York* (1969), 252 Ind. 252, 247 N.E.2d 197; *Herman* v. *Ferrell* (1971), 150 Ind. App. 384, 276 N.E.2d 858; *Rust* v. *Watson* (1966), 141 Ind. App. 59, 215 N.E.2d 42, *reh. den.* 217 N.E.2d 859.

However, in *Lamb* v. *York, supra,* the court stated in *dictum:*

> "There can be no question but what a deliberate attempt on the part of counsel to inject insurance into a case would be reversible error." 252 Ind. 252, 261, 247 N.E. d 197, 203.

This statement was acknowledged by the court in *Herman,* and is heavily relied upon by Chrysler.

This case was vigorously tried by capable and experienced trial lawyers. We agree with Chrysler that despite the heat of trial, the statement made by York's counsel can be viewed as nothing less than the deliberate injection of improper matter into the trial. On the other hand, we are equally

---

3. It is interesting to note that while the trial court entered the proper form of verdict, the form originally returned by the jury assessed $35,000 damages to Chrysler and $35,000 to York.

unimpressed with Chrysler's attempted justification for asking its question in the manner employed.[4] We need not here recount the methods that may be employed to secure the legitimate evidence while avoiding the prejudicial aspects of insurance disclosure, except to observe that Alumbaugh's initial examination in this very deposition secured the needed information but carefully avoid any reference to insurance or the involvement of the carrier.

Accordingly, we hold that within the principle applied in *Dale* v. *Trent* (1970), 146 Ind. App. 412, 256 N.E.2d 402, the error was invited. As such, the remedy remained within the trial court's discretion. We cannot say that discretion was abused under the facts before us.

*III. Application of Strict Liability*

By several assignments in its motion to correct errors, Chrysler asserts that it was error to permit the jury to predicate Chrysler's liability under § 402A of the Restatement of Torts (2nd 1964).[5] It is Chrysler's contention that § 402A has no application to injured bystanders. Since Alumbaugh was a bystander, vis-a-vis use or consumption of the product, Chrysler claims prejudicial error.

Indiana has expressly adopted § 402A liability. *Ayr-Way Stores, Inc.* v. *Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335; *Perfection Paint* v. *Konduris* (1970), 147 Ind. App. 106, 258 N.E.2d 681; *Cornette* v. *Searjeant Metal Products, Inc.* (1970), 147 Ind. App. 46, 258 N.E. 2d 652.

---

4. We do not consider any special ramifications that might be attributed to the fact that the matter was presented by deposition, since Chrysler skipped pages to reach the precise question read. The situation does underscore the desirability of pretrial review of depositions taken originally for discovery when it is ascertained they will be introduced in evidence at trial.

5. These assignments covering the verdict, the failure to grant a directed verdict, and the instruction covering liability under § 402A, which is alleged inapplicable, are considered together.

The section provides:

"§ 402 A.  Special Liability of Seller of Product for Physical Harm to User or Consumer

(1)   One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a)   the seller is engaged in the business of selling such a product, and

(b)   it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)   The rule stated in Subsection (1) applies although

(a)   the seller has exercised all possible care in the preparation and sale of his product, and

(b)   the user or consumer has not bought the product from or entered into any contractual relation with the seller."

We note, of course, that comment "o" to this section of the restatement expressly disavows any position on behalf of the Institute as to whether the section should be applied to non-users and non-consumers.

In Indiana, § 402A liability was first adopted in *Cornette* v. *Searjeant Metal Products, Inc., supra.* Chrysler urges upon us the following from Judge Hoffman's opinion in that case:

"Our reading of § 402A, *supra,* and numerous cases applying it, leads us to the conclusion that it should be strictly construed and narrowly applied. The limitations on imposition of the doctrine should be fully invoked, and 'strict liability' applied only in those cases which fully and fairly meet the § 402A, *supra,* standards." 147 Ind. App. 46, 53, 258 N.E.2d 652,

However, Judge Sharp wrote a separate concurrence, in which Judge Pfaff joined, expressing disagreement with this statement and indicating as an example that the section should be applicable to bystanders.  Judge White also wrote a separate concurrence in which he concluded the question

was not before the court and prematurely spoken to. Thus, no majority of the court adopted the rule of strict construction.

Eight days later the same panel decided *Perfection Paint* v. *Konduris* (1970), 147 Ind. App. 106, 258 N.E.2d 681. The case is significant because the court found no difficulty in applying § 402A despite the fact that no actual sale was involved.

The only decision in which our Supreme Court has had occasion to consider § 402A liability is *Ayr-Way Stores, Inc.* v. *Chitwood, supra.* The opinion in that case upheld the propriety of amending the pleadings to conform to the evidence, thereby presenting a claim for strict liability. The action was for injuries sustained by a four year old when a lawnmower purchased by his father and being operated by his uncle failed to stop and ran over him. While one may rationalize that the plaintiff was a member of the purchaser's household, he was nevertheless essentially a bystander in the context of the incident.

Other jurisdictions have found little difficulty in applying the section to bystanders where they were within the area of reasonably foreseeable risk.[6]

Following his excellent opinion in *Greeno* v. *Clark Equip. Co.* (N.D. Ind. 1965), 237 F.Supp. 427, applying § 402A under Indiana law, Judge Eschbach considered the status of the bystander plaintiff in *Sills* v. *Massey-Ferguson, Inc.* (N.D. Ind. 1969), 296 F.Supp. 776. Again considering Indiana law, he concluded the bystander should be permitted to maintain a § 402A action.

In these cases Judge Eschbach examined the purposes behind the section, and we examined them here.

6. *Caruth* v. *Mariani* (C.A. Ariz. 1970), 463 P. 2d 83; *Elmore* v. *American Motors Corp.* (1969), 70 Cal. 2d 578, 451 P. 2d 84; *Darryl* v. *Ford Motor Co.* (1969), Texas, 440 S.W.2d 630; *Piercefield* v. *Remington Arms Co.* (1965), 375 Mich. 85, 133 N.W.2d 129; *Mitchell* v. *Miller* (1965), 26 Conn. Sup. 142, 214 A. 2d 694.

Justifications for this form of strict liability generally recognize two basic policy considerations. One is that the manufacturer and supplier can best bear and spread the losses caused by their defective products. Presumably an "insurance factor" is, or can be, reflected in the price of goods. Thus, the choice is not merely whether to compensate an injured individual at the risk of inhibiting the development of business and the economy.

A second consideration is the potential of the provider to control and therefore reduce the risk of potentially dangerous defects.

To the extent that these policies underpin the rule of law, traditional distinctions between purchasers, users and bystanders appear superfluous.

Furthermore, there is nothing inherent in bystander status to preclude liability. *Sills, supra.* While it may be said that bystanders do not have the same reasons for expecting protection as the consumer who buys a marketed product,[7] the consumer's desire to acquire products free of unreasonably dangerous defects cannot be deemed restricted to exclude from consideration all other persons within the zone of foreseeable risk. In short, the reasoning which fostered the adoption of § 402A in Indiana precludes the automatic exclusion of bystanders from those entitled to assert strict liability against manufacturers and suppliers.

One point remains. As discussed by Judge Eschbach in *Sills,* an alternative theory of bystander recovery would grant standing to any person injured, regardless of foreseeability. *See,* Justice Traynor's concurring opinion in *Escola* v. *Coca Cola Botttling Co.* (1944), 24 Cal.2d 453, 150 P.2d 436. This view characterizes foreseeability as strictly a negligence concept, and therefore finds it inapplicable to a claim of strict liability.

---

7. *See,* Restatement Torts 2nd, § 402A, comment "o."

We believe foreseeability has a deeper significance and is inherent in a system of civil liability utilizing fault as a cornerstone. While § 402A eliminates consideration of the care exercised by the manufacturer or supplier in fixing liability, it does not reject the concept of fault. Instead it moves yet one plane further from intentional harms by imposing an affirmative duty to avoid supplying products in a defective condition and which are unreasonably dangerous. Application of § 402A to bystanders should be limited to those whom the manufacturer or supplier should reasonably foresee as being subject to the harm caused by the defect.

Here it was reasonably foreseeable that if Chrysler's vehicle was unreasonably dangerous due to a defective braking system, the occupants of other vehicles being operated on the highway in close proximity to the Chrysler vehicle were subject to harm from the defect.

Furthermore, the court properly instructed the jury in this regard, stating:

> "The supplier of a product, such as a manufacturer or a retail merchant, who sells the product in a defective condition unreasonably dangerous to the consumer, is subject to liability for physical harm proximately caused by such defect, if the supplier is engaged in the business of selling such products, and if the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. This rule applies even though the supplier has exercised all possible care in the preparation and sale of his product. Further, this rule of liability for harm caused by unreasonably dangerous defects applies to damages or injuries suffered by bystanders, as well as to injuries to the consumer or user himself, if the injured bystander is within the class of persons which the supplier should reasonably foresee as being subject to harm from such defect."

*IV. Missing Witness Instruction*

At trial, Chrysler objected to the following instruction tendered by York and given by the court:

"Where a party has the power and opportunity of producing a witness, presumably favorable to him, who can further enlighten the jury, his failure to produce such witness gives rise to an inference that such witness, if produced, would give testimony unfavorable to the party failing to produce such witness."

The objection was that the instruction was designed to attack Chrysler's failure to call John Davis as a witness when there was no showing that Davis was unavailable to either Alumbaugh or York. (As discussed *infra,* on the date of the collision, Davis was an employee of Greiger Motors and conducted a post-accident test of the vehicle.)

It has been long recognized in Indiana that under certain circumstances, such an inference may arise from a litigant's failure to call a witness. *Lee* v. *State* (1900), 156 Ind. 541, 60 N.E. 299; *Hinshaw* v. *State* (1896), 147 Ind. 334, 47 N.E. 157; *Bowes* v. *Lambert* (1943), 114 Ind. App. 364, 51 N.E.2d 83, *reh. den.* 51 N.E.2d 897; *Bump* v. *McGrannahan* (1915), 61 Ind. App. 136, 111 N.E. 640.

Furthermore, these cases have allowed the court to so instruct the jury with the admonition that the instruction be carefully worded to protect the proper interests of the party.

On the other hand, such instructions have been held properly refused when not clearly required by the evidence, as where the witness is available to both sides. *Armstrong* v. *State* (1967), 248 Ind. 396, 229 N.E.2d 631; *Loehr* v. *National Security Life Ins. Co.* (1969), 144 Ind. App. 503, 247 N.E.2d 232; *Cauldwell, Inc.* v. *Patterson* (1961), 133 Ind. App. 138, 177 N.E.2d 490.

Thus, while such instructions may be appropriate when the facts in evdience uniquely require application of the principle involved, we do not approve their casual acceptance. In most cases, the record made will simply be silent as to why a particular witness was not called. There may be many legitimate reasons for the failure including the merely cumula-

tive nature of the testimony to be secured, the failure of the witness to have perceived that he might have observed, or the existence of independent grounds for an opponent to question his general credibility. Under such circumstances, counsel may determine as a matter of trial strategy to bypass the witness, but not because he will testify adversely. Nor do we believe that the trial should be burdened with the production of all such witnesses simply to protect against an instruction or adverse inference.

Nevertheless, when reviewing the use of an instruction, we must consider whether an appellant has demonstrated harm. Our consideration has been expressed as determining whether the error is likely to have influenced the verdict. *N.Y.C. etc. R.R. Co. v. Henderson* (1957), 237 Ind. 456, 146 N.E.2d 531, *reh. den.* 147 N.E.2d 237; *Schutz v. Rose* (1964), 136 Ind. App. 165, 196 N.E.2d 285.

During plaintiff's case, the defendant York was called as a witness. He testified that on the day of the collision he returned to Greiger Motors with the truck. At that time, John Davis was employed as Greiger's service manager. York stated that, with Davis driving, he and Davis then took the vehicle for a test drive. He testified that Davis accelerated to about forty miles per hour, then applied the brakes, and the vehicle jerked to the left "clear across the road." He testified that they did basically the same thing two more times, and that each time the vehicle jerked to the left when the brakes were applied.

This evidence was admittedly damaging to Chrysler's position at trial. However, it must be recognized that it was York's testimony, rather than any inference prompted by the instruction over the failure of Davis to appear as a witness, that contributed to the verdict. We therefore conclude no prejudicial error has been shown.

## V. Results of Experiment

As part of his case, Alumbaugh presented as a witness Robert Podlasek, a research mechanical engineer, who conducted tests upon the pickup truck on February 29, 1969.

While numerous objections were made by Chrysler to Podlasek's testimony and to exhibits introduced in evidence in connection therewith, Chrysler's primary contention, and the only one argued in its brief, is that Alumbaugh failed to establish a proper foundation to permit the test results to be received in evidence.

Accordingly, we address this argument and consider the other alleged errors waived pursuant to Rule AP. 8.3 (A) (7).

The collision occurred February 4, 1969. On February 12, Podlasek made a visual inspection of the vehicle at Sharp's Garage in Gary, Indiana. On February 22, the vehicle was towed with the front wheels off the ground to Packer Laboratories at Naperville, Illinois. It was stored there until February 29, when Podlasek conducted his experiments in driving and braking the vehicle.

In the first test, he drove straight down the road at thirty miles per hour and made a "hard stop." He stated that the result was that the truck stopped relatively in a straight line with the direction he had been driving and that he noticed a slight tugging to the left but this was easily controlled.

The second test was approximately the same as the first, except the truck was driven at forty miles per hour. This time the truck "skidded" slightly to the left and stopped about two feet to the left.

The third test repeated the second test except that Podlasek applied harder pressure to the brake pedal. He testified that when this was done, the vehicle "suddenly cut over to the left and made a sharp turn, and went across the opposing lane, and cut off and went off into the culvert into the ditch on the other side of the road."

Chrysler correctly asserts that evidence of such experiments may be properly introduced in evidence only when a proper foundation is established. It asserts that no such foundation was presented here because (a) Podlasek did not know what, if anything, might have been done to the truck between February 12 and February 22; (b) that Podlasek had not viewed the accident scene when he ran the tests; and (c) that in each of the tests Podlasek applied the brakes so as to leave skid marks and this constituted a substantial deviation from the circumstances of the collision.

Before considering these allegations, it is well to review the law generally applicable to the introduction of such experiments in evidence. The usual basis for objection is that the test is irrelevant and highly prejudicial because it has little or no probative value in establishing the fact to be proved at trial, while it has a strong propensity to mislead the jury. As in other questions of the relevancy of evidence, the trial court is invested with sound discretion to admit or exclude the evidence. *See, Spears* v. *Aylor* (1974), 162 Ind. App. 340, 319 N.E.2d 639; McCormick On Evidence (2nd Ed.), § 202, p. 486.

The exercise of this discretion involves an examination by the court of the similarity between the conditions under which the test was performed and the circumstances surrounding the event at issue in the trial.[8]

The best statement we have found of the rule in Indiana appears in *Vandalia R. Co.* v. *Duling* (1915), 60 Ind. App. 332, 348-9, 109 N.E. 70, 75,

"In order that evidence of such a character may be admissible, it is not essential that the conditions be exactly reproduced in all their details. If so reproduced, credible evidence of an experiment and its results would amount to

8. Thus, the extent to which the circumstances should be similar may vary with the fact the test is seeking to establish. To establish the probative value of a test, there is no need to establish the similarity of circumstances which have no effect upon the validity of the test result to tend to prove the point in issue.

demonstration, and would be conclusive on the issue involved. It is sufficient if the conditions under which the experiment was made are shown to have been substantially the same as those that existed in the transaction being investigated. If substantially the same, any departure goes to the weight rather than the admissibility of the evidence. In determining whether the conditions are shown to be substantially the same, there is of necessity a requirement for the exercise of some discretionary power by the trial court." *See, also, Clevenger* v. *Kern* (1935), 100 Ind. App. 581, 197 N.E. 731; *Chicago, St. L. & P. R.R. Co.* v. *Champion* (1893), 9 Ind. App. 510, 36 N.E. 221.

Did the trial court abuse its discretion by admitting the testimony of Podlasek regarding the tests?

Admittedly, Podlasek testified that he did not know what, if anything, might have been done to the truck between February 12 and February 22. Furthermore, it was certainly significant to the validity of the tests that the braking system had not been materially altered from the manner in which it operated at the time of the collision.

On the other hand, the tests were conducted only twenty-five days after the collision, and the period contested by Chrysler in its brief is the nine or ten days while the vehicle was stored at the Sharp Garage. Chrysler has not asserted that the vehicle was tampered with nor does any evidence to sustain such an inference appear in the record. Neither does it appear that the braking system would be subject to any degeneration or deterioration during the brief time in question. We cannot say that the court abused its discretion by not requiring further proof in this regard before admitting the evidence. *See, Orr, Adm.* v. *Econo-Car* (1971), 150 Ind. App. 411, 276 N.E.2d 524.

Chrysler claims lack of foundation because Podlasek did not view the accident scene prior to making the tests. However, he did view the scene later and testified that there was no significant difference between the road at the scene and the road upon which the tests were conducted. He also stated

the tests were performed on straight, dry asphalt pavement with the temperature about 32°. York, the driver of the truck, testified to similar conditions as having existed at the time of the collision. There was no lack of foundation in these respects.

Finally, Chrysler asserts that the evidence establishes that the manner of applying the brakes during the tests was so dissimilar to the manner employed by York at the collision that the court should have sustained its motion at the close of all the evidence to strike Podlasek's testimony. The basis for this contention is Podlasek's admission that in each of the three tests he applied the brakes so as to leave skid marks. Chrysler contrasts this to York's testimony that he did not know whether or not he locked the wheels when he applied the brakes at the time of the collision and that on cross examination, when asked if he left skid marks at the time of the collision, he replied, "Not to my knowledge."[9] In addition, Chrysler points out that the police officer who investigated the collision testified that he did not recall seeing any skid marks.

Of course, the testimony of these two witnesses that they did not recall skid marks does not negate their existence. What is more significant is that Podlasek testified to the speeds at which he drove the vehicle and that in the first and second tests he applied the brakes in a "hard stop" and in the third test he applied them yet harder. York's testimony was that he was driving approximately forty or forty-five miles per hour before the collision occurred and that he applied the brakes ". . . good and firm. I hit them pretty good."

Thus, while Chrysler could challenge the weight to be accorded the tests on this basis, we cannot say the court erred in refusing to strike Podlasek's testimony.

Chrysler has failed to demonstrate error in the admission of the test results.

---

9. On direct examination he had simply stated that he did not know whether he had left skid marks.

## VI. Other Instructions and Exclusion of Exhibits

Chrysler claims error in the court's refusal to give its tendered instructions numbered 3 and 6.

Instruction 3 sought to advise the jury of the duties Chrysler did *not* owe. The instruction was confusing. Its subject matter was properly covered by the instructions given by the court on the prerequisites to finding liability on the part of Chrysler.

Instruction 6 sought to advise the jury that Chrysler had a right to rely upon the assumption that York would use reasonable care while operating the pickup truck. This instruction was also confusing and misleading since it implied that if York was negligent in any manner, such negligence would preclude liability of Chrysler under § 402A. Again the subject matter was properly covered by the court's instructions on the causation necessary to Chrysler's liability.

There was no error in refusing these instructions.

Finally, Chrysler objects to the exclusion from evidence of two exhibits offered during the trial. Both exhibits relate to the testing conducted by Packer Laboratories.

Exhibit 2 is a report of a visual inspection made of the pickup truck on February 12, 1969, by Norris Yonker and Robt. Podlasek. However, when the exhibit was excluded, Chrysler called Norris Yonker as a witness. He testified fully to the inspection made and what was observed.

Similarly, Chrysler offered as its exhibit 3 a letter from Dr. James Hazdra to Packer reporting infrared analysis of the brake lining surfaces and Hazdra's conclusion that there was no grease on the surface of the lining. Previously, during the presentation of the testimony of Dr. Packer, the court allowed in evidence his statement that Dr. Hazdra had made the analysis and that in Hazdra's opinion, the results were negative. The offered exhibit establishes no more, nor was there any dispute that such was his conclusion.

We therefore need not reach the issue of whether the introduction of these exhibits was "invited" by the evidence introduced by the plaintiff so as to render them admissible despite their hearsay qualities. They were merely repetitions of testimony otherwise before the jury. While the conclusions drawn may well have been disputed, there was no dispute that the testimonial report of their contents was accurate. Accordingly, exclusion of the exhibits does not present a question of reversible error. *Jackson* v. *Rutledge* (1919), 188 Ind. 415, 122 N.E. 579; *Conner* v. *Citizens St. R. Co.* (1896), 146 Ind. 430, 45 N.E. 662; *Jeffersonville, M. & I. R. Co.* v. *Riley* (1872), 39 Ind. 568.

Affirmed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 342 N.E.2d 908.

### ON PETITION FOR REHEARING

GARRARD, J.—Chrysler's petition for rehearing questions, *inter alia*, whether the proper standard of appellate review was applied in determining that error in giving a "missing witness" instruction was harmless.

In support of its argument, Chrysler quotes from *American Employers Ins. Co.* v. *Cornell* (1948), 225 Ind. 559, 569, 76 N.E.2d 562, 566:

> "It is true that prejudice from an erroneous instruction is presumed unless the contrary affirmatively appears and in considering the effect of an erroneous instruction this court assumes that the error influenced the result unless it appears from the interrogatories, the evidence, or some other part of the record that the verdict under proper instructions could not have been different."

The quotation also appears in *Probst, Receiver* v. *Spitznagle* (1939), 215 Ind. 402, 19 N.E.2d 263; *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N.E. 577; *N.Y.C. R.R.* v. *Knoll* (1965), 140 Ind. App. 264, 204 N.E.2d 220; *Perkins* v. *Sullivan*

(1957), 127 Ind. App. 426, 143 N.E.2d 105; and *Public Svc. Co. v. DeArk* (1950), 120 Ind. App. 353, 92 N.E.2d 723.[1]

Other cases have pointed out that the focus is upon whether the jury may have been misled. *See, Christian* v. *Gates Rubber Co.* (1969), 145 Ind. App. 229, 250 N.E.2d 486; *Paxton* v. *Ferrell* (1969), 144 Ind. App. 124, 244 N.E.2d 439; *Summers* v. *Weyer* (1967), 141 Ind. App. 176, 226 N.E.2d 904.

As we pointed out in our opinion, the damage to Chrysler, if any, occurred from the unrebutted testimony of York rather than from any inference to be drawn from the failure of Davis to appear as a witness. It does not appear that the verdict might have been different had the instruction not been given and we reiterate that the error was harmless.

Nevertheless, we recognize that our statement regarding "determining whether the error is likely to have influenced the verdict" supports a broader connotation. Accordingly, we modify our opinion to conform to the views expressed herein, and deny appellant's petition for rehearing.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 348 N.E.2d 654.

---

1. All these cases found the error harmless except *N.Y.C. R.R.* v. *Knoll,* supra.